MIDWEST BRIDGE COMPANY v DEPARTMENT OF
TRANSPORTATION

Docket No. 71027. Submitted March 8, 1984, at Lansing.—Decided
May 14, 1984. Leave to appeal applied for.

Midwest Bridge Company entered into a contract with the De-
partment of Transportation to perform grading, install drain-
age structures, alter utilities, and surface service drives on I-
696 in the City of Warren. Midwest subcontracted with Sivier
Construction Company to perform certain items of the work.
The contracts involved were unit price contracts, by which the
contractor and subcontractor are paid for each unit of work
performed. The determination of how much work was per-
formed in both contracts was made solely by the Department of
Transportation, which would prepare biweekly estimates of
work performed based upon measurements from the job site
and complex calculations performed under the supervision of
the department's project engineer. The biweekly estimates also
designated what portion of the work was performed by Sivier.
On the basis of the biweekly estimates, progress payments were
made by the department to Midwest, less a certain percentage
held by the department as a retention fund. In reliance on the
biweekly estimate, Midwest then paid Sivier out of the progress
payment for its work performed. The project was completed in
December, 1974. In April, 1976, the department indicated to
Midwest that it had overestimated the amount of work per-
formed by Sivier, and thus would withhold $105,939.74 from
the retention fund otherwise due Midwest. The final estimate of
the contract amount was entered on March 22, 1978, indicating
that Sivier was overpaid by Midwest in the amount of
$105,939.74. Consequently, the department withheld that
amount from the retention fund due Midwest. Midwest filed
suit against the department in the Court of Claims alleging
breach of contract and seeking recovery of the $105,939.74.
Following a bench trial, the Court of Claims, James R. Gid-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 64 Am Jur 2d, Public Works and Contracts §§ 50 *et seq.*, 62.
65 Am Jur 2d, Public Works and Contracts § 177.

dings, J., found in favor of plaintiff and awarded it $105,939.74. The department appeals. *Held:*

The trial court did not err in finding that it was necessary for plaintiff to rely on defendant's erroneous estimates, in holding that defendant breached its warranty to make accurate estimates and payments, and in awarding damages to plaintiff in the amount withheld by defendant.

Affirmed.

1. CONTRACTS — PUBLIC WORK — ADVERTISED SPECIFICATIONS AND ESTIMATES — ERRORS AND MISCALCULATIONS.

The bidder on a proposal for public work may, when acting in good faith, rely on advertised specifications and estimates when there is nothing in the estimates to indicate that they are made merely by way of suggestion; if reliance is made on the estimates, the bidder is not required to bear increased costs resulting from the errors and miscalculations merely by reason of the fact that he was unable to or did not test their accuracy.

2. HIGHWAYS — CONTRACTS — CONSTRUCTION PROJECTS — PLANS AND SPECIFICATIONS — MISREPRESENTATION — ACTIONS.

Factual inaccuracies in the state's plans and specifications for a proposed highway construction project may give rise to a cause of action for misrepresentation if the inaccuracies have been relied on by the contractor to his detriment.

*Doyle Group Attorneys, P.C.* (by *Jane A. Klepac*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Patrick F. Isom,* Assistant Attorney General, for defendant.

Before: CYNAR, P.J., and R. B. BURNS and R. L. TAHVONEN,* JJ.

R. B. BURNS, J. On March 16, 1972, plaintiff, Midwest Bridge Company, entered into a contract with defendant, Michigan Department of Transportation (MDOT), to perform grading, install drainage structures, alter utilities and surface ser-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

vice drives on I-696 in the City of Warren. Certain items of work called for under this contract were subcontracted by Midwest to the Sivier Construction Company. The subcontract between Midwest and Sivier was approved and accepted by MDOT.

The contracts between Midwest and MDOT and between Midwest and Sivier were unit price contracts. Under unit price contracts, the contractor and subcontractor are paid for each unit of work performed, in contrast to a lump-sum contract where the contractor is paid for the total amount of work performed. The determination of how much work was performed in both contracts was made solely by MDOT. During the course of construction, MDOT would prepare biweekly estimates of work performed based upon measurements from the job site and complex calculations performed under the supervision of MDOT's project engineer. The biweekly estimates also designated what portion of the work was performed by Sivier. On the basis of the biweekly estimates, biweekly progress payments were made by MDOT to Midwest, less a certain percentage held by MDOT as a retention fund. In reliance on the biweekly estimate, Midwest then paid Sivier out of the progress payment for its work performed.

The project was officially completed in December, 1974. On April 15, 1976, MDOT indicated to Midwest that it had overestimated the amount of work performed by Sivier, and thus was going to withhold $105,939.74 from the retention fund otherwise due Midwest. By this time, however, Sivier was dissolved as a corporation and there remained no assets available to allow Midwest to recoup the overpayments made in reliance on MDOT's biweekly estimates. The final estimate of the contract amount was entered on March 22, 1978.

According to the final estimate, Sivier was overpaid by Midwest in the amount of $105,939.74. Consequently, MDOT withheld this amount from the retainage due Midwest.

Midwest then filed suit against MDOT alleging breach of contract and seeking recovery of the $105,939.74. A bench trial was held in the Court of Claims. The trial court found in favor of Midwest and awarded it $105,939.74. MDOT now appeals and we affirm.

Midwest contended at trial that the method by which it paid Sivier was dictated by the state, and that this method necessitated reliance on the progress estimates made solely by MDOT. Midwest claimed, therefore, that MDOT breached its warranty to make accurate measurements and estimates on which it knew plaintiff must rely.

Although this issue is one of first impression in Michigan, it is closely analogous to the issue presented in *Hersey Gravel Co v State Highway Dep't,* 305 Mich 333; 9 NW2d 567 (1943). In *Hersey,* bidding opened on a contract calling for excavation of approximately 373,000 cubic yards of earth and 17,000 cubic yards of rock. Plaintiff won the bid, and during performance completed excavation of an additional 32,000 cubic yards of earth and 11,000 cubic yards of rock. Plaintiff sought compensation for the additional excavations completed. The trial court found for plaintiff, holding that a warranty was made in connection with the excavations, and that this warranty had been breached because of the misstatement of the conditions actually existing. On appeal, defendant argued that the contract required plaintiff to satisfy itself regarding actual soil conditions, and therefore defendant did not warrant the contract specifications. The Supreme Court, however, rejected defendant's argument, stating (305 Mich 340-341):

"This provision put plaintiff on notice, but the notations on the plans had the effect of also advising plaintiff that an investigation had been made by the highway department of the character of the soil along the entire proposed highway. The testimony shows that this investigation extended over a considerable period of time. The period between the time the advertisement appeared asking for bids and the date upon which bids were to be submitted and opened would not suggest to any reasonable bidder that it was necessary for him to make a more extended investigation of soil conditions than was made by plaintiff's manager, Allswede, who spent two days examining the proposed right of way. Plaintiff complied with the requirements of the proposal and carried out the responsibility to satisfy itself as to actual soil conditions by the examination of its manager of the site of the proposed work.

" 'Undoubtedly the commission's knowledge of subsoil conditions was superior to that of the plaintiffs, and they tried to acquire this knowledge from it. It is equally true that these facts were not within the fair reasonable reach of the plaintiffs, and there was lack of time for them to obtain this information by an independent investigation before the letting. * * *

" 'The duty rested on the sewer commission to furnish to the plaintiffs in this case all the material information it had in its possession, obtained either by borings or from past experience, as to subsoil conditions in the sewer line, and if it failed to do so, and as a result thereof the plaintiffs were put to large additional expense in completing the contract, they are entitled to recover the reasonable damages sustained by them.' *Davis v Comm'rs of Sewerage,* 13 F Supp 672, 681 (WD Ky, 1936)."

*Hersey* is in accordance with decisions from other jurisdictions. It is well settled that the bidder on a proposal for public work may, when acting in good faith, rely on advertised specifications and estimates when there is nothing in those estimates to indicate that they are made merely by way of suggestion. If reliance is made on the estimates,

the bidder is not required to bear increased cost resulting from the errors and miscalculations merely by reason of the fact that he was unable to or did not test their accuracy. 65 Am Jur 2d, Public Works and Contracts, § 177, pp 58-60 and cases cited therein; 16 ALR 1131; *W H Knapp Co v State Highway Dep't*, 311 Mich 186; 18 NW2d 421 (1945). Factual inaccuracies in the state's plans and specifications for a proposed highway construction project may give rise to a cause of action for misrepresentation if the inaccuracies have been relied on by the contractor to his detriment. *Kensington Corp v Dep't of State Highways*, 74 Mich App 417; 253 NW2d 781 (1977).

Although the inaccuracies relied on by Midwest in the instant case were not in the plans and specifications, *Hersey* should apply, as defendant warranted the accuracy of its estimates.

Midwest had no method independent of MDOT's estimates to calculate the amount of work accomplished by Sivier. Even had Midwest waited until the end of the job to pay Sivier, it was required by statute to pay within 60 days after completion of the job. MCL 570.1101 *et seq.;* MSA 26.316(101) *et seq.* Midwest was not notified of the overpayment until two years after completion. Accordingly Midwest would still have been required to rely on the original MDOT estimates had Midwest waited until the end of the job to pay Sivier.

The trial court found that it was necessary for plaintiff to rely on defendant's erroneous estimates. The court held, therefore, that defendant breached its warranty to make accurate estimates and payments, and awarded damages to plaintiff in the amount withheld by defendant. As the court's holding was not clearly erroneous, GCR 1963, 517.1, we affirm.