# STATE OF MICHIGAN

# COURT OF APPEALS

LAWRENCE M. CLARKE, INC.,

        Plaintiff/Counter Defendant-
        Appellee,

v

KIM S. DRAEGER,

        Defendant-Appellant,

and

KD EQUIPMENT LEASING, INC. and AIC,
INC.,

        Defendants/Counter
        Plaintiffs/Third-Party Plaintiffs-
        Appellants,

v

GUARANTEE COMPANY OF NORTH
AMERICAN USA and XL REINSURANCE
AMERICA, INC.,

        Third Party Defendants-Appellees.

UNPUBLISHED
January 15, 2015

No. 316194
Ingham Circuit Court
LC No. 08-000227-CZ

Before: TALBOT, C.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

In this contractor-subcontractor dispute, defendants, two corporations and the individual who exclusively owns and controls them,[1] appeal as of right from the judgment of the circuit order awarding damages to plaintiff. We reverse and remand for further proceedings.

## I. FACTS

Plaintiff was the general contractor for construction of a portion of a sanitary sewer system in Billings Township. Defendant had earlier encouraged plaintiff to bid on the project, and provided plaintiff with a unit-price proposal covering all the projected work. Plaintiff accepted the proposal and, after increasing the prices by 12 percent for its own profit, submitted it as its bid. Initially plaintiff had expected defendant, as its subcontractor, to provide all the materials and do all the work, with plaintiff contributing only some general supervision.

Defendant arranged with two subcontractors of its own to work on the project. The parties entered into a written subcontract for work to be performed by defendant in two sections of the project. Defendant and its subcontractors worked on other sections as well, but no additional subcontracts were executed. Plaintiff itself tended to some sections as well, in order to fulfill its obligations to the municipality under the general contract.

But, as the trial court summarized, "the project did not begin, progress, or end in a perfect world." According to plaintiff s witnesses, defendant and its subcontractors provided less than perfect, competent, or complete work.

While the project was in progress, one of the corporate defendants sold its assets to the other, who then took over the project, and the proceeds of the sale were applied to an obligation for back taxes.

The evidence included copies of certificates of automatic dissolution of the two corporate defendants. The corporate owner admitted failing to pay annual corporation fees or file annual reports, but insisted that he had since achieved reinstatement of those corporations.

Plaintiff commenced action in 2008, setting forth several theories of recovery, including breach of contract and unjust enrichment. Defendants counterclaimed, alleging breach of contract and, alternatively, unjust enrichment, and initiated a third-party action for payment bond against plaintiff's two sureties. The trial court summarized the evidence concerning deficiencies in defendant's performance on the project, held that the individual defendant should be personally responsible for the corporate defendants' liabilities in the matter, and awarded plaintiff over $900,000 in damages, costs, and interest. The court concluded that the question of the existence of attendant contracts, and of performance under them, was "somewhat problematic," and elected to decide the case under the theory of quantum meruit.

---

[1] For convenience, in light of the great identify of interest of the three defendants, except when there is a need to distinguish them they will be referred to collectively as "defendant."

On appeal, defendant argues that the trial court erred in eschewing contract law in favor of the equitable doctrine of unjust contract, or quantum meruit, in how it calculated damages, and in piercing the corporate veil. When reviewing an equitable determination reached by the trial court, this Court reviews the conclusion de novo, but reviews the supporting findings of fact for clear error. *Mich Nat'l Bank & Trust Co v Morren*, 194 Mich App 407, 410; 487 NW2d 784 (1992). "The applicability of a legal doctrine is a question of law," calling for review de novo. *James v Alberts*, 464 Mich 12, 14; 626 NW2d 158 (2001).

## II. CONTRACT OR UNJUST ENRICHMENT

Defendant argues that the trial court erred in applying the doctrine of unjust enrichment where there existed an express contract. We agree.

" 'A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty.' " *Black's Law Dictionary* (6th ed, 1990), p 322, quoting Restatement Contracts, 2d, § 3. The elements of a valid contract are "parties competent to contract, a proper subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." *McInerney v Detroit Trust Co*, 279 Mich 42, 46; 271 NW 545 (1937). In contrast, "[t]he elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993). "In such instances, the law operates to imply a contract in order to prevent unjust enrichment." *Id.* This theory of recovery is also variously labeled quasi-contract or contract-in-law, see *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 546; 473 NW2d 652 (1991), or quantum meruit, see *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 194; 729 NW2d 898 (2006).

"However, a contract will be implied only if there is no express contract covering the same subject matter. Generally, an implied contract may not be found if there is an express contract between the same parties on the same subject matter." *Id.* (internal quotation marks, citations, and emphasis omitted).

In this case, the trial court quoted extensively from *Morris Pumps*, including where this Court recited that, in earlier times, a party seeking a remedy for a breach of contract could choose between an action in contract law or an action in equity for quantum meruit, but Michigan law has evolved to where the latter is no longer available where an express contract exists. See *Barber*, 202 Mich App at 375. The trial court then stated as follows:

> The only way to fairly dispose of this case is for the court to make a determination concerning damages based on a quantum meruit theory. Indeed, both sides during the course of trial seemed to agree that, on [defendant's] part, it only wished to be paid for the work it performed, and on [plaintiff's] part, it was prepared to pay [defendant] for the work it actually performed.
>
> The parties could not figure out among themselves which party owed the other money, so they approached a trial judge that was otherwise ignorant about the transaction and gave him the authority to apply his ignorance to the hundreds of transactions that were documented during the course of the project.

The court thus signaled its intention to resort to quantum meruit instead of contract law more in the matter of the election of remedies that *Morris Pumps* recounted was once, but no longer, available in litigation over express contracts. This is not a situation where the parties respectively pleaded in contract over part of their dealings with each other, and in unjust enrichment over other parts of those dealings. Neither party made any such distinction; each instead set forth a contract claim, then reiterated it under the rubric of unjust enrichment as an alternative. The parties' acknowledged intention that defendant be paid for work actually performed comports with ordinary contract law, which provides for partial payment for partial performance. And mere inconvenience in determining contractual obligations is not a reason to eschew contract law in favor of unjust enrichment principles.

Plaintiff on appeal continues not to distinguish contract claims from noncontract claims, but maintains instead that the court's resort to unjust enrichment was appropriate in light of problems with identifying the status of the various defendants as contract partners, valid corporate entities, successor interest holders, etc. But confusion of that sort is not among the reasons *Morris Pumps* recognized as allowing quantum meruit claims to be pleaded and maintained alongside contract claims.[2] The rule remains that quantum meruit, or unjust enrichment, is not available where an express contract governs the matter at issue. *Morris Pumps*, 273 Mich App at 194; *Barber*, 202 Mich App at 375.

To the extent that the trial court invoked the equitable doctrine of quantum meruit in connection with matters covered by a valid contract, express or implied, the court erroneously applied the doctrine more broadly that the current legal framework allows.

The trial court recited that defendants Draeger and AIC "submitted a unit-price proposal to [plaintiff] for the completion of all the work required by the township," which plaintiff accepted, then marked up 12 percent and submitted to the township for the winning bid. The trial court further noted that the parties "entered into a written subcontract for work to be performed by [defendant] in two sections of the project . . . ." In eschewing contract law in favor of quantum meruit for this whole cause of action, the court treated the equitable doctrine as applicable even where it recognized the existence of an express contract, without offering findings on whether some, if not all, of the other matters in issue likewise were covered by contract.

AIC's proposal that formed the basis for plaintiff's bid on the municipal project is not styled as a contract, and is not signed by any party, but the record provides bases for recognizing

---

[2] Moreover, as discussed in Part IV, *infra*, the trial court's decision to pierce the corporate veil and hold the individual and corporate defendants equally responsible for the corporate liabilities eliminated any need to distinguish between the three defendants below with regard to work done, compensation earned, or liabilities incurred. Plaintiff on appeal defends the trial court's decision to pierce the corporate veil.

that the proposal, as supplemented by undocumented understandings, functioned as a contract between the parties, in light of the parties' performance under, and reliance on, it.[3]

That a separate contract was executed for two sections does not necessarily indicate that defendant's work on other sections took place without any express contract. The separate arrangement for two sections came about partly to allow two subcontractors of defendant to begin work on those sections, while retaining the pricing terms of the original proposal. The parties thus continued to treat the original proposal, including as adapted by plaintiff for purposes of submitting its bid on the project, as setting forth express contract terms.

Plaintiff's secretary and vice president confirmed that defendant offered a proposal for the entire project, and that plaintiff submitted that proposal as its own bid to the municipality, but for marking it up 12 percent. Asked if that proposal, as modified, was used through the course of the project to determine how much to pay defendant, that witness answered in the affirmative.

Plaintiff's secretary and vice president further testified that the project was broken into several sections as the behest of engineers, that the parties executed a subcontract for those sections, and that defendant additionally worked on four other sections and was paid in accord with the original proposal. Asked if she could have required defendant to sign additional contracts before offer attendant payments, the witness replied, "I should have, . . . I really should have." She agreed that, according to the "overall agreement," however, defendant would be paid for the work actually done.

The failure to realize apparent plans to execute contracts specifically covering those other sections could be taken as an indication that the parties attended to that work without a contract, such that any conflicts that arose in the matter would have be resolved by recourse to other than contract law. But actual performance taking place in mutual reliance on the master bid, as informed by the express contract for sections 10 and 15, suggests that the parties were operating under an implied contract which incorporated by mutual understanding the terms set forth in defendant's proposal as transformed into plaintiff's bid for the job.

A valid contract requires a meeting of the minds or mutual assent on all essential terms. *Eerdmans v Maki*, 226 Mich App 360, 364; 573 NW2d 329 (1997); *Stark v Kent Products, Inc*, 62 Mich App 546, 548; 233 NW2d 643 (1975). The determination of mutual assent is an objective one based on the parties' words and actions. *Stark*, 62 Mich App at 548. Where contract terms are set forth in the form of an offer that clearly shows a willingness to enter an agreement, acceptance of that offer, including by performance in strict conformance with that offer, establishes a binding agreement. See *Eerdmans*, 226 Mich App at 364.

In this case, the conflicts that arose between the parties overwhelmingly concerned performance of their agreed-upon obligations, not the particulars of what they agreed upon in the

---

[3] See *Stevens v Corbitt*, 33 Mich 458, 461 (1876) (a promise to pay a sum certain for a construction project that is both accepted by performance done in reliance on that promise establishes a binding contract).

first instance. The trial court identified no terms necessary to a contract in this situation to which the parties did not agree in fact, and neither does plaintiff on appeal. Plaintiff acknowledges defendant's assertions that all work underlying this case came under contract, and neither disputes that premise nor suggests that any defenses invalidated such express agreements and thus left the court with no choice but to invoke its equitable powers.

For these reasons, we remand this case to the trial court with instructions for specific determination of what aspects of the parties relationship underlying this litigation came under contract, express or implied, and reevaluate the evidence and decide the competing contract claims under contract law where applicable, then to resort again to unjust enrichment, or quantum meruit, only to the extent that justice requires operation of that equitable where no valid contract was in place.

## III. DAMAGES

In arguing that the trial court committed several errors in calculating what the parties owed each other, defendant identifies three subjects of disagreement with plaintiff: Whether the work defendant completed should be measured by the pay estimates or by final measurements, whether plaintiff should pay defendant for the general contract items included in defendant's proposal, and whether some of the back charges plaintiff claimed as necessary to complete work on defendant's sections were legitimate.[4]

## A. PAY ESTIMATES OR FINAL MEASUREMENTS

Not in dispute is that this project proceeded on the basis of unit price contracts, meaning that "the contractor and subcontractor are paid for each unit of work performed, in contrast to a lump-sum contract where the contractor is paid for the total amount of work performed." *Midwest Bridge Co v Dep't of Transp*, 134 Mich App 611, 613; 350 NW2d 913 (1984).

When, on cross-examination, defendants' counsel asked plaintiff's secretary and vice president if the pay estimates were indeed mere estimates, she rejected that characterization and explained how progress was carefully measured each day: "They weren't guesstimates. Everybody pulled the tape measure when we had an inspector handy." However, when invited to agree that final measurements taken upon completion of the project would differ from the sum

---

[4] Plaintiff argues that at least some of defendant's contract claims were barred by a provision in the subcontract executed for two sections of the project that called for the subcontractor to provide "written notice of all claims within seven (7) days of . . . knowledge of facts giving rise to the event for which claim is made," else "such claims shall be deemed waived." However, defendant ably retorts that plaintiff waived that affirmative defense for having failed to assert it in its pleadings. See MCR 2.111(F). Defendant also plausibly asserts that sufficient knowledge of facts to establish damages until plaintiff produced certain documentation after this litigation began. We further note that the trial court apparently did not consider any such defense below. For these reasons, we conclude that this alternative argument for affirmance is unavailing.

of those earlier daily measurements, the witness replied, "Give or take a few feet, sir, you're probably right." The exchange continued as follows:

> *Q*. If the . . . nine pay estimates total up to just a round number of a thousand feet, but the final measurement by the engineers is eleven hundred feet, what's the contractor going to get paid?
>
> * * *
>
> *A*. Hypothetically, in that scenario, if that measurement was eleven hundred feet, you are correct, sir.
>
> *Q*. Okay.
>
> *A*. He would be paid for eleven hundred feet.

Article 10 of the subcontract executed for two sections of the project covers payment. Section 10.2 calls for "[p]rogress payments, less retainage" for work "satisfactorily performed, no later than seven (7) days after receipt by [plaintiff] of payment from Billings Township for Subcontract Work," then adds, "Final payment of the balance due shall be made to Subcontractor no later than seven (7) days after receipt by [plaintiff] of final payment from Billings Township for subcontract Work." This provision clearly contemplates a series of payments that are not deemed to reflect all payment due until a final payment from the municipality allows such a reckoning.

The trial court looked to the several pay estimates as reflecting how the parties managed the progress payments. Plaintiff suggests that the trial court properly looked no further to determine how much defendant had earned, but defendant insists that the court should have consulted change estimate 4, which sets forth the final balancing in relation to plaintiff's contract with the municipality. Plaintiff argues that defendant is not entitled to claim any benefits from change order 4, on the ground that defendants were not parties to the contract under which it came into being. The trial court apparently agreed with defendant, however, in regarding change order 4 as offering a basis for adjusting earlier estimates to reflect actual work accomplished, but stated that it "declines to make any adjustment to the amount due [plaintiff] based on change order no. 4, on the basis the evidence does not establish which party may have been at fault for construction delays that apparently led to the assessment of liquidated damages."

The latter declaration is problematic. Actual work completed, as determined by final measurements, is a matter apart from liquidated damages resulting from construction delays. Any difficulties in determining responsibility for such delays still leaves in plain view change order 4's detailed listing of work done, adjustments made, and amounts due and owing. Further, to the extent that plaintiff wished that any adjustments in payments to defendant take into account responsibility for liquidated damages resulting from delays, plaintiff bore the burden of proving defendant's liability in the matter. If indeed the trial court was not satisfied that the evidence preponderated in plaintiff's favor in this regard, the court should simply have declined to adjust what change order 4 otherwise suggested was owed to defendant.

It is not clear whether the court's disregard of change order 4, and attendant decision to determine work completed by defendant solely on the basis of the pay estimates, resulted from its decision to eschew contract law in favor of the equitable doctrine of unjust enrichment, or quantum meruit. Regardless, the trial court should have consulted available final measurements in calculating the parties outstanding obligations. We instruct the trial court on remand to consult change order 4 for this purpose, or some other documentation as is determined, or agreed, to reflect final measurements.

## B. GENERAL CONTRACT ITEMS

Defendants advises that "[g]eneral project items are things that must be done on the Project but do not pertain to a particular physical location or section," and names as examples "testing the pipe, tree removal, traffic control, and mobilization," and argues that the trial court should have credited defendant for such general project items it determines defendant to have contributed to the project. The trial court declined to do so on the grounds that no such provision was included in the subcontract for two sections, and that there was no other "documentary evidence supporting defendants' assertion . . . except that general pay items were included in the amounts defendants placed in the document it used to compile the bid submitted to" plaintiff.

On appeal, defendant points to testimony whereby plaintiff's vice president stated that work done on sections in addition to the two governed by a separate contract was to be paid in accord with defendant's proposal, but plaintiff's cofounder testified that he informed defendant that there would be no payment for general contract items, and that they were thus "excluded from his subcontract." This Court defers to the factfinder's determinations of credibility. *Zeeland Farm Servs, Inc v JBL Enterprises, Inc*, 219 Mich App 190, 195; 555 NW2d 733 (1996). The trial court stated that it generally found plaintiff's witnesses more credible than defendant's witnesses.

Despite the inclusion of general contract items in the original proposal, their exclusion from the subcontract covering two sections, coupled with testimony that this exclusion was intentional and reflected the parties' understanding, supported the trial court's decision to make no allowance to defendant for general contract items in calculating damages.

## C. BACK CHARGES

Defendant concedes that as the relationship with plaintiff broke down and defendant ceased working on the project, plaintiff attended to some of what had originally been defendant's responsibilities. Defendant recognized some of plaintiff's back charges as legitimate all along, and offer a list of additional back charges defendant now regards as proved, or accepts as the result of adverse factual findings. But defendants maintains that certain back charges plaintiff claimed "were unsupported, inflated, and duplicative." Defendants specify charges stemming from inspecting and repairing pipes throughout the project, inflated labor costs, duplicative billing, work on plaintiff's own sections or costs resulting from plaintiff's own negligence, a management fee, certain demands of Billings Township, and ditching expenses never incurred. Defendants also argue that they were improperly held responsible for the full amounts of certain bond claims instead of for the actual amounts that plaintiff and the claimants settled upon.

A party asserting a claim has the burden of proving its damages with reasonable certainty. Although damages based on speculation or conjecture are not recoverable, damages are not speculative merely because they cannot be ascertained with mathematical precision. It is sufficient if a reasonable basis for computation exists, although the result be only approximate. [*Berrios v Miles, Inc*, 226 Mich App 470, 478-479; 574 NW2d 677 (1997) (internal quotation marks and citations omitted).]

However, for the great many of its allegations that plaintiff claimed back charges without evidentiary support, or attempted to benefit from duplicate billings, plaintiff has failed to show how any such allegedly improper back charges were included within the trial court's assessment of such charges.[5] "A party may not merely announce his position and leave it to us to discover and rationalize the basis for his claim." *In re Toler*, 193 Mich App 474, 477; 484 NW2d 672 (1992).

The exception is the trial court's decision to hold defendant responsible for the full amounts of certain of defendant's creditor's payment bond claims, instead of for the lesser amounts for which plaintiff settled those claims. In holding defendant to the full amount, the trial court stated, "It is the court's view that [defendant] should not benefit from plaintiff's successful efforts to compromise amounts claimed to be owed by [defendant] and for which the creditors of [defendant] asserted bond claims." Defendant's objection to this reasoning has merit.

A party injured by another's failure to perform under a contract "is not entitled to be placed in a better position than he would have been had the contract not been broken." *Parmet Homes, Inc v Republic Ins Co*, 111 Mich App 140, 150-151; 314 NW2d 453 (1981). "The injured party . . . however, must make every reasonable effort to minimize the loss suffered . . . ." *Tel-Ex Plaza, Inc v Hardees Restaurants, Inc*, 76 Mich App 131, 134; 255 NW2d 794 (1977). Accordingly, when awarding damages, "deduction of any saving to the injured party must be made." *Goodwin, Inc v Orson E Coe Pontiac, Inc (Supplemental Opinion)*, 62 Mich App 405, 413; 233 NW2d 598 (1975).

Defendant reports that plaintiff never requested the full amounts of the bond claims below, and we note that plaintiff does not suggest otherwise on appeal. Again, it is not clear whether the trial court's decision to rely on its own empirical sense of fairness in this instance, rather than an injured party's duty to mitigate damages, or a court's duty to adjust awards of damages to reflect successful such mitigation, resulted from its decision to eschew contract law in favor of the doctrine of unjust enrichment. Regardless, we conclude that the court erred in awarding plaintiff back charges in connection with bond claims in amounts greater that what plaintiff actually paid.

---

[5] Plaintiff presented an exhibit listing over $850,000 in back charges claimed, and requested others during the course of trial, but in the end the trial court recognized back charges adding up to only $446,424.

## IV. PIERCING THE CORPORATE VEIL

Our decision to reverse and remand for application of contract law where applicable, and correction of the damages award in at least two particulars, may seem to render moot, or at least premature, the question whether the trial court properly held the individual and corporate defendants equally liable for corporate liabilities in this matter. Because the issue may arise again on remand, however, we will address it.

"In general, the law treats a corporation as an entirely separate entity from its stock-holders, even where one person owns all the corporation's stock." *Lakeview Commons Ltd Partnership v Empower Yourself, LLC*, 290 Mich App 503, 509; 802 NW2d 712 (2010) (internal quotation marks and citation omitted). A court need not respect that fiction, however, "when it is invoked to subvert justice." *Id.* "Traditionally, the basis for piercing the corporate veil has been to protect a corporation's creditors where there is a unity of interest of the stockholders and the corporation and where the stockholders have used the corporate structure in an attempt to avoid legal obligations." *Id.* at 409-510 (internal quotation marks and citation omitted). A court may disregard the distinct identities of corporations from those of their affiliates, officers, or shareholders where the corporation was merely the instrumentality of another entity or individual, the corporate structure was used to perpetuate a fraud or other wrong, and the plaintiff suffered unjust loss or other injury in the matter. *Foodland Distributors v Al-Naimi*, 220 Mich App 453, 457; 559 NW2d 379 (1996).

In electing to disregard the distinctions between the individual and corporate defendants below, the trial court explained as follows:

> To the extent Draeger, sole owner of AIC and KD, did not operate the entities in conformance with the requirements of Michigan's corporation statute, MCL 450.1 *et seq*[.], he is not entitled to claim exemption from personal liability and the protection of the corporate shield. Draeger did not file annual reports, did not hold shareholder or board of directors meetings, did not pay annual filing fees, and permitted each corporation to be dissolved.

> * * *

> Draeger entered into the Billings Township transaction with [plaintiff] in the name of his alter ego, AIC Inc. He was obviously undercapitalized, still owed [plaintiff] $19,800 from a previous project. Neither he nor his company AIC had the wherewithal to bid the project with [plaintiff's] participation as the prime contractor. AIC had no capacity to acquire the performance and payment bonds required by the project.

> During the course of AIC's participation in the project, from about mid-April, 2007 to mid-November, 2007, AIC did not fully pay its subcontractors or suppliers, which could only mean Draeger paid himself before he paid his subs or creditors.

> Draeger testified his corporations, including AIC and KD Equipment Leasing, had been dissolved by the State because annual reports were not filed.

-10-

Draeger testified the corporations did not hold annual or regular shareholder or directors meetings. During the course of his participation in the project, Draeger permitted his insurances to lapse, and at one point apparently assigned the [plaintiff]/AIC contract from AIC to KD. The "contract" between [plaintiff] and AIC included a no assignment clause as well as a clause requiring AIC to maintain its insurance coverages.

Accordingly, Draeger is not permitted to be shielded by corporate form. He is personally liable for the indebtedness resulting from this opinion.

In disputing the court's reasoning, defendant does not contest any of the court's factual findings, but rather cites authority for the propositions, respectively, that the failure to comply with statutory formalities, undercapitalization, failure to pay creditors, failure to maintain required insurance, and assignment to an undercapitalized successor corporation are insufficient on their own to justify piercing the corporate veil. But defendant cites no authority for the proposition that any of those factors is irrelevant to the inquiry, let alone that the five of them together do not add up to sufficient justification.

Defendant additionally argues that there was no finding to the effect that abuse of the corporate form caused any injury to plaintiff. But defendant offers little elaboration, beyond the assertions that plaintiff's "purported injuries arose, if at all, because AIC allegedly breached the parties' contract," and that the law "does not allow a plaintiff to hold shareholders liable every time a corporation breaches a contract." However, the obvious rejoinder is that if not every breach of contract is grounds for piercing the corporate veil, it does not necessarily follow that no breach of contract can ever take place under circumstances warranting that remedy.

The trial court identified ways in which defendant Draeger's undercapitalization and management of his corporations caused plaintiff serious distress in connection with its contract with the municipality. Defendant does not argue that the court clearly erred in finding that Draeger failed to see that AIC's subcontractors or other creditors were consistently paid all monies due, but instead reports that that Draeger at times elected to apply what funds he had, apparently including payments from plaintiff upon promises to pay AIC's subcontractors or other creditors, to other business expenses. This assignment of something less than highest priority to paying AIC's subcontractors and other creditors threw AIC's performance of its responsibilities to the project, and thus plaintiff's ability to fulfill its obligations to the municipality, into doubt. Likewise that defendant Draeger allowed the required insurance coverages to lapse.

Plaintiff relies on the federal case, *Mich Laborers' Health Care Fund v Taddie Constr, Inc*, 119 F Supp 2d 698, 703 (ED Mich, 2000), where the court deemed sufficient a wrong for purposes of piercing the corporate veil that the corporation and its sole shareholder failed to fund fringe benefits to which corporate employees were entitled.[6] Defendant distinguishes *Laborers'*

---

[6] This Court is not bound by federal decisions construing Michigan law, but may consult them as persuasive authority. See *Allen v Owens-Corning Fiberglas Corp*, 225 Mich App 397, 402; 571 NW2d 530 (1997).

*Health Care Fund* from the instant case in that the former involved corporate business carried on by the owner after the corporation was dissolved for failure to file reports, and apparently remained dissolved, see *id*. at 700-701, whereas the instant corporate defendants were reinstated as corporations in good standing. However, the federal court analyzed the failure to pay benefits separately from the continuation of operations after dissolution, treating the two as alternatives, and did not suggest that without dissolution the failure to fund employees' benefits would not justify piercing the corporate veil. *Id*. at 702-703.

Also instructive is this Court's recent decision in *Brooks Williamson & Assocs, Inc v Mayflower Constr Co*, ___ Mich App ___; ___ NW2d ___ (Docket No. 317122, issued November 13, 2014), where the panel concluded that the defendant failed to show good cause for setting aside a default resulting in a piercing of the corporate veil for having "failed to offer any facts disputing the allegations of commingling, misappropriating and siphoning of assets, and disregard for corporate formalities." Slip op p 8.

For these reasons, defendants have failed to show that the trial court erred in piercing the corporate veil.

## V. CONCLUSION

The trial court erred in resolving the entire case under the rubric of quantum meruit, of unjust enrichment, instead of contract law, where the court acknowledged that a written contract covered part of the activities involved, and stopped short of finding that others were not also covered by contract, implied or otherwise. The court additionally erred assessing what was owed to defendant by relying on pay estimates to the exclusion of any final measurements, and in holding defendant responsible for the full amounts of payment bond claims that plaintiff in fact settled for lesser amounts. Defendant fails to show that the trial court otherwise miscalculated damages, or erred in piercing the corporate veil.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly

-12-