MORRIS PUMPS v CENTERLINE PIPING, INC
R VANDER LIND & SON, INC v CENTERLINE PIPING, INC

Docket Nos. 268717, 268718. Submitted December 5, 2006, at Detroit. Decided December 12, 2006, at 9:00 a.m. Leave to appeal sought.

Morris Pumps, a division of Yeomans Chicago Corporation, brought an action in the Wayne Circuit Court against Centerline Piping, Inc.; and EBI-Detroit, Inc. R. Vander Lind & Son, Inc.; Chemineer, Inc.; and Robbins & Meyer, Inc., brought a separate action in that court against the same defendants. Both actions asserted breach of contract claims against Centerline and unjust enrichment claims against EBI, all arising out of a construction project for which EBI was the general contractor, Centerline was a subcontractor, and the plaintiffs were material suppliers that had provided materials and equipment under contracts with Centerline. After Centerline went out of business and abandoned the project, EBI retained a replacement subcontractor, which used the materials and equipment that the plaintiffs had delivered but for which the plaintiffs were never paid. The court, John A. Murphy, J., consolidated the cases and subsequently granted partial summary disposition in the plaintiffs' favor on the issue of liability with respect to their unjust enrichment claims against EBI. EBI sought leave to appeal in each case. The Court of Appeals granted the applications and consolidated the appeals.

The Court of Appeals *held*:

1. The express contracts between the plaintiffs and Centerline do not bar recovery from EBI in quantum meruit. The theory underlying quantum meruit is that the law will imply a contract to prevent unjust enrichment when one party inequitably receives and retains a benefit from another. While a contract may not be implied if there is an express contract between the same parties on the same subject matter, EBI was not a party to any of the contracts between Centerline and the plaintiffs.

2. To sustain a claim of quantum meruit or unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because the defendant retained the benefit. While not all enrichment is unjust in nature, neither EBI nor the replacement

subcontractor ever paid the plaintiffs for the materials or equipment. Regardless of whether EBI itself retained and used the materials or merely acquiesced in the replacement subcontractor's retention and use of them, EBI was a party to the decision to retain and use them without paying the plaintiffs, and an inequity resulted to the plaintiffs from the wrongful retention of the items.

3. The fact that EBI paid to the replacement subcontractor the full price specified in the original subcontract did not lessen or alleviate EBI's obligation to compensate the plaintiffs for the materials and equipment.

4. The plaintiffs were properly allowed to pursue in the alternative their contract claims against Centerline and their quantum meruit claims against EBI. While a plaintiff may not assert simultaneous and alternative claims for breach of contract and unjust enrichment against the same defendant, a plaintiff may assert a contract claim against one defendant with whom an express contract exists and a quantum meruit claim against a different defendant with whom no express contract exists.

5. The availability of claims against EBI's payment bond under the public works bonding act, MCL 129.201 *et seq.*, does not preclude the use of alternative common-law remedies such as quantum meruit.

6. The trial court did not err by imposing a constructive trust to ensure that EBI would compensate the plaintiffs upon a determination of the proper recovery amounts. A court may impose a constructive trust when necessary to do equity or avoid unjust enrichment. A court may impose a constructive trust under any circumstance that renders it unconscionable for the holder of legal title to retain and enjoy the property. While a court may not impose a constructive trust on a party who did not contribute to the reasons for imposing the constructive trust, EBI's actions did contribute to the reasons for imposing one in this case.

Affirmed.

1. CONTRACTS — IMPLIED CONTRACTS — QUANTUM MERUIT — PLEADING — ALTERNATIVE THEORIES OF RECOVERY.

The existence of an express contract between a plaintiff and a defendant bars the plaintiff from asserting an alternative quantum meruit claim against that defendant, but a plaintiff may simultaneously and alternatively assert a contract claim against one defendant with whom an express contract exists and a

quantum meruit claim against a different defendant with whom no express contract exists.

2. EQUITY — ACTIONS — QUANTUM MERUIT — CONSTRUCTION PROJECTS — PUBLIC-WORKS PAYMENT BONDS.

The availability of a claim by a plaintiff against a payment bond furnished by a defendant in connection with a public-works construction project does not preclude the plaintiff from seeking alternative common-law remedies, such as quantum meruit, from the defendant (MCL 129.203, 129.206).

3. EQUITY — CONSTRUCTIVE TRUSTS.

A court may impose a constructive trust when necessary to do equity or avoid unjust enrichment; a court may impose a constructive trust under any circumstance that renders it unconscionable for the holder of legal title to retain and enjoy the property; a court may not impose a constructive trust on a party who did not contribute to the reasons for imposing a constructive trust.

*Thomas M. Keranen & Assoc., P.C.* (by *Peter J. Cavanaugh*), for Morris Pumps.

*Oade, Stroud & Kleiman, P.C.* (by *Ted W. Stroud* and *Sean P. McNally*), for R. Vander Lind & Son, Inc.

*Ronald B. Rich & Associates* (by *Ronald B. Rich*) for Chemineer, Inc.

*Poling, McGaw & Poling, P.C.* (by *D. Douglas Mc-Gaw*), for EBI-Detroit, Inc.

Before: JANSEN, P.J., and SAWYER and BANDSTRA, JJ.

JANSEN, P.J. In these consolidated cases, defendant EBI-Detroit (defendant) appeals by leave granted the trial court's grant of summary disposition on the issue of liability in favor of plaintiffs Morris Pumps; R. Vander Lind & Son, Inc.; and Chemineer, Inc. (plaintiffs).[1] We affirm.

---

[1] Plaintiff Robbins & Meyers, Inc., is not a party to this appeal.

I. FACTS

The facts underlying these consolidated cases are essentially undisputed. The city of Detroit contracted with defendant, as general contractor, to construct a $28 million wastewater treatment facility in St. Clair County, Michigan. As required under its general contract and the public works bonding act (PWBA), MCL 129.201 *et seq.*, defendant furnished performance and payment bonds for the construction project.

Defendant subcontracted with Centerline Piping, Inc., to complete the mechanical portion of the construction project. The subcontract between defendant and Centerline totaled more than $3.3 million. In order to complete the subcontract, Centerline was required to contract with several material suppliers for the provision of equipment and supplies. Each of these suppliers, including plaintiffs, separately contracted with Centerline to provide various equipment and materials in exchange for payment.[2] Plaintiffs timely delivered the equipment and supplies required under their respective contracts with Centerline. However, Centerline never paid plaintiffs.

In July 2004, not long after plaintiffs had made delivery to Centerline under their respective contracts, Centerline apparently went out of business and abandoned the construction project.[3] Defendant therefore terminated Centerline as a subcontractor and retained

[2] The record indicates that Morris Pumps contracted to provide $66,006 worth of equipment and materials, R. Vander Lind & Son contracted to provide $169,425 worth of equipment and materials, and Chemineer contracted to provide $101,479 worth of equipment and materials.

[3] At the time Centerline went out of business and abandoned the project, defendant had paid only approximately $1.3 million of the total $3.3 million subcontract to Centerline. It is unclear how much of this $1.3

a replacement contractor to finish the mechanical portion of the project. The replacement contractor used the equipment and materials, which had been previously delivered by plaintiffs and which was already present on the construction site, to finish the job. Because the materials had already been present on the site when the replacement contractor was retained, the replacement contractor did not bill defendant for the items. Neither defendant nor the replacement contractor ever paid plaintiffs for the equipment and materials ultimately used to complete the construction project.

R. Vander Lind & Son sent notice that it intended to assert a claim against defendant's payment bond. However, the notice was untimely under the PWBA. It is undisputed that R. Vander Lind & Son would have been entitled to reimbursement in the amount of $169,425 had it properly and timely pursued its claim against the payment bond. It is unclear whether Morris Pumps and Chemineer ever attempted to assert claims against the payment bond.

R. Vander Lind & Son and Chemineer filed suit, asserting a breach of contract claim against Centerline and an unjust enrichment claim against defendant.[4] In a separate action, Morris Pumps sued Centerline and defendant as well, similarly asserting a breach of contract claim against Centerline and an unjust enrichment claim against defendant.[5] On January 21, 2005, the trial court consolidated the two cases pursuant to MCR 2.505.

---

million, if any, represented the amount owed by defendant to Centerline for the equipment and materials provided by plaintiffs.

[4] R. Vander Lind & Son and Chemineer also asserted a breach of contract claim against defendant and a claim for declaratory relief.

[5] Morris Pumps also asserted a claim of account stated against Centerline.

Pursuant to MCR 2.116(C)(10), plaintiffs moved for partial summary disposition with respect to their unjust enrichment claims against defendant. Noting that Centerline had "[a]pparently . . . gone out of business," the trial court granted summary disposition with respect to liability in favor of R. Vander Lind & Son and Morris Pumps. The trial court ruled that despite the availability to plaintiffs of alternative relief by way of the payment bond, defendant had been unjustly enriched when it retained and used without paying the equipment and materials delivered by plaintiffs. Thereafter, the trial court denied defendant's motion for reconsideration and amended its judgment to grant summary disposition with respect to liability in favor of Chemineer, as well. The court reserved for a later date the calculation of plaintiffs' specific recovery amounts. The court noted that it would continue to consider the proper amounts of recovery, and might take proofs regarding plaintiffs' losses at a later time.

Defendant sought leave to appeal the grant of partial summary disposition in favor of plaintiffs on the unjust enrichment claims. We granted defendant's applications.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). MCR 2.116(C)(10) provides for summary disposition if there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law. When deciding a motion for summary disposition under subrule C(10), a court must consider the entire record in a light most favorable to the nonmoving party. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d

342 (2004). Review is limited to the evidence presented to the trial court at the time the motion was decided. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 313 n 4; 660 NW2d 351 (2003). The content or substance of the evidence proffered must be admissible. *Maiden v Rozwood*, 461 Mich 109, 123; 597 NW2d 817 (1999). A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Whether a specific party has been unjustly enriched is generally a question of fact. See *Dumas v Auto Club Ins Ass'n*, 168 Mich App 619, 637; 425 NW2d 480 (1988), rev'd on other grounds 437 Mich 521 (1991); see also *Hayes-Albion Corp v Kuberski*, 421 Mich 170, 186; 364 NW2d 609 (1984). However, whether a claim for unjust enrichment can be maintained is a question of law, which we review de novo. *Liggett Restaurant Group, Inc v Pontiac*, 260 Mich App 127, 137; 676 NW2d 633 (2003). Finally, we review de novo a trial court's dispositional ruling on an equitable matter. *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005).

### III. ANALYSIS

Our Supreme Court "has long recognized the equitable right of restitution when a person has been unjustly enriched at the expense of another." *Michigan Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 198; 596 NW2d 142 (1999) (MEEMIC). " 'Even though no contract may exist between two parties, under the equitable doctrine of unjust enrichment, "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." ' "

*Id.*, quoting *Kammer Asphalt Paving Co v East China Twp Schools*, 443 Mich 176, 185; 504 NW2d 635 (1993) (citation omitted).

### A. EXISTENCE OF EXPRESS CONTRACTS

Defendant first argues that plaintiffs' unjust enrichment claims against it were barred by the existence of express contracts executed between plaintiffs and Centerline, which covered the same subject matter. We disagree.

It is true that Centerline had express contracts with plaintiffs concerning the supplies and materials that plaintiffs agreed to furnish. However, the mere existence of these express contracts between plaintiffs and Centerline was not sufficient to bar plaintiffs' unjust enrichment claims against defendant, with which plaintiffs had no express contractual relationships.

The theory underlying quantum meruit recovery is that the law will imply a contract in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another. *Martin v East Lansing School Dist*, 193 Mich App 166, 177; 483 NW2d 656 (1992). "However, a contract will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003). "Generally, an implied contract may not be found if there is an express contract *between the same parties* on the same subject matter." 42 CJS, Implied and Constructive Contracts, § 34, p 33 (emphasis added).

Turning to the case at bar, we recognize that there existed express contracts between plaintiffs and Centerline, all of which concerned the subject matter at issue here. Thus, we agree with defendant that there were express contracts covering the same subject mat-

ter. However, defendant was not a party to any of these express contracts. Therefore, the contracts did not exist *between the same parties*. Because there were no express contracts *between the same parties* on the same subject matter, *id.*, defendant's argument with respect to this issue must fail. The mere existence of the express contracts between plaintiffs and Centerline does not bar recovery from defendant in quantum meruit.

### B. INEQUITABLE RETENTION BY DEFENDANT

Defendant next argues that plaintiffs cannot maintain their claims for unjust enrichment because it did not "unjustly" or "inequitably" retain the materials and equipment that had been delivered by plaintiffs. We disagree.

" 'The essential elements of a quasi contractual obligation, upon which recovery may be had, are the receipt of a benefit by a defendant from a plaintiff, which benefit it is inequitable that the defendant retain.' " *MEEMIC, supra* at 198, quoting *Moll v Wayne Co*, 332 Mich 274, 278-279; 50 NW2d 881 (1952). Thus, in order to sustain a claim of quantum meruit or unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant. *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993). In other words, the law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense.

Defendant contends that it was not unjust or inequitable for it to retain and use the materials delivered to the construction site by plaintiffs. Defendant asserts that just because it was enriched, it does not necessarily

follow that the enrichment was unjust. Defendant suggests that because the materials were simply left behind at the construction site by Centerline, it was entitled to use the items to complete the construction project.

We agree with defendant that not all enrichment is necessarily unjust in nature. In general,

> [a] third party is not unjustly enriched when it receives a benefit from a contract between two other parties, where the party benefited has not requested the benefit or misled the other parties . . . . Otherwise stated, the mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi-contract, unjust enrichment, or restitution. Moreover, where a third person benefits from a contract entered into between two other persons, in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person. [66 Am Jur 2d, Restitution and Implied Contracts, § 32, p 628.]

Rather than examining solely whether a defendant was enriched, it is necessary to determine whether that enrichment was unjust or inequitable: "The key to any quantum meruit recovery from a noncontracting party is proof that he or she unjustly received and retained an independent benefit from the plaintiff's contractual services." *Id.*

As noted previously, neither defendant nor the replacement contractor retained by defendant to finish the project ever paid plaintiffs for the materials and supplies. As the general contractor, defendant was responsible for overseeing all construction and was charged with supervising all subcontractors present on the site, including the replacement contractor retained after Centerline left the project. Moreover, as the general contractor, defendant was surely aware that the materials and supplies used to complete the project had

been specially delivered to the site by plaintiffs. Defendant was also likely aware that Centerline, which had gone out of business and had left the project, had not paid for the items. Regardless of whether defendant itself retained and used the materials, or merely acquiesced in the replacement contractor's retention and use of the materials, defendant was necessarily a party to the decision to use and retain the materials without paying plaintiffs.

If defendant's retention of the materials supplied by plaintiffs had been completely innocent and without knowledge, we might be inclined to conclude that defendant's enrichment was not unjust. *Id.* However, we simply cannot classify defendant's act of retaining and using the materials, without ever ensuring that plaintiffs were compensated for the materials, as innocent, just, or equitable. We conclude that an inequity resulted to plaintiffs from defendant's wrongful retention of the materials. *Barber, supra* at 375. Defendant's retention of the materials, coupled with defendant's failure to compensate plaintiffs, resulted in the unjust enrichment of defendant at plaintiffs' expense.

C. SATISFACTION OF FULL CONTRACT PRICE BY DEFENDANT

Defendant next argues that it was not unjustly enriched because it paid the full price of the original subcontract with Centerline to the replacement contractor, which was retained after Centerline's departure. Again, we disagree.

Defendant asserts that by the time the construction project was completed, it had paid the replacement contractor not only the full amount that would have been due Centerline under the original subcontract, but also an additional $380,000 for additional costs that were occasioned by Centerline's abandonment of the

project. Accordingly, defendant argues that it performed in full—paying more than the original subcontract price—and was therefore not unjustly enriched by retaining the materials supplied by plaintiffs.

We recognize that defendant may have paid more than the full contract price originally contemplated in the subcontract with Centerline. However, this does not lessen or alleviate defendant's obligation to compensate plaintiffs for the materials that were taken and used in the course of the construction project. The fact that defendant lost money and necessarily paid $380,000 over and above the original subcontract price likely vests defendant with a right of action against Centerline. But the payment of $380,000 above and beyond the originally contemplated subcontract price in no way affects defendant's separate and distinct obligations to plaintiffs. Plaintiffs were not parties to the original subcontract between defendant and Centerline, nor were they parties to the subsequent agreement between defendant and the replacement contractor. Centerline's breach of the initial subcontract had nothing to do with plaintiffs, and the mere fact that Centerline's breach cost defendant more than originally anticipated does not undo the wrongful nature of defendant's retention of plaintiffs' products. We reject the argument that payment in full of the originally anticipated subcontract price somehow negates defendant's obligation to compensate plaintiffs for the inequitably retained materials.

### D. ALTERNATIVE RELIEF THROUGH CONTRACT DAMAGES

Defendant suggests that plaintiffs' proper remedy was an action for contract damages against Centerline and that the availability of this alternative remedy precluded plaintiffs' claims against defendant for quantum meruit. We disagree.

It is true that, while a claim for contract damages is legal in nature, a claim of quantum meruit is equitable in nature. However, our Supreme Court has long recognized that these two claims may be pleaded in the alternative and that a plaintiff who has performed under a contract may elect between either of these two remedies. See *Nyman v B S Chapin, Inc*, 255 Mich 442, 444-445; 238 NW 195 (1931); see also *Corman Co v L A Young Industries*, 231 Mich 628, 630; 204 NW 746 (1925).

> "The general rule is well settled that a party to a contract, where labor is to be performed, upon the breach of that contract by the other party, has two remedies open to him. He may sue upon the contract, and recover damages for its breach, or he may ignore the contract, and sue for services and labor and expenses incurred from which he has derived no benefit." [*Id.*, quoting *Midland Operating Co v Miller*, 197 Mich 567, 570; 164 NW 443 (1917).]

Indeed, the general rule in contract disputes is that there is an election of remedies between breach of contract and unjust enrichment, and the choice of remedies is ordinarily with the nonbreaching party. 17B CJS, Contracts, § 602, p 306.

These rules, allowing simultaneous and alternative claims for breach of contract and unjust enrichment, no longer appear to be good law when both claims are asserted against the *same* defendant, with whom the plaintiff has an express contractual relationship. As noted above, in such situations Michigan courts now hold that the existence of the express contract bars the quantum meruit claim. *Belle Isle Grill Corp, supra* at 478. However, we perceive no reason why a plaintiff should not be allowed to simultaneously and alternatively assert a contract claim against one defendant with whom an

express contract exists and a quantum meruit claim against a *different* defendant with whom no express contract exists.

All three plaintiffs asserted breach of contract claims against Centerline. The three plaintiffs also asserted unjust enrichment claims against defendant. Quite simply, the availability of relief through plaintiffs' breach of contract claims against Centerline in no way barred plaintiffs' unjust enrichment claims against defendant, with which plaintiffs had no express contractual relationship.[6] Plaintiffs were properly allowed to pursue in the alternative their contract claims against Centerline and their quantum meruit claims against defendant.

### E. ALTERNATIVE RELIEF THROUGH THE PWBA

Defendant additionally suggests that plaintiffs' proper remedy was an action on defendant's payment bond and that the availability of this alternative remedy precluded plaintiffs' quantum meruit claims against defendant. We disagree.

Remote material suppliers and sub-subcontractors that furnish materials and supplies to contractors and subcontractors qualify as claimants under the PWBA. MCL 129.203; MCL 129.206; see also *W T Andrew Co, Inc v Mid-State Surety Corp*, 450 Mich 655, 659; 545 NW2d 351 (1996). Thus, plaintiffs would have been entitled to pursue claims against defendant's payment

---

[6] Only partial summary disposition was granted by the trial court, and we are not aware whether plaintiffs' breach of contract claims against Centerline have been resolved. We express no opinion concerning the likely success of these breach of contract claims, and express no opinion about whether any eventual judgment against Centerline, which has apparently gone out of business, will ever be collectible. However, we note that if the breach of contract claims against Centerline move forward and are successful, plaintiffs will be entitled to only one recovery and will not be permitted to collect full judgments from both Centerline and defendant.

bond in the amounts owed to them by Centerline. MCL 129.203. Had plaintiffs properly pursued claims against the payment bond, they would have been entitled to recovery from the bond in the amounts that they were owed.

Courts in some foreign jurisdictions have determined that recovery under their respective statutory schemes is the exclusive remedy for aggrieved material suppliers and sub-subcontractors that are not paid.[7] However, this is not the law in Michigan. A plaintiff enjoyed the right at common law to recover in quantum meruit from a defendant who had been unjustly enriched at the plaintiff's expense. Indeed, quantum meruit is a common-law remedy. See *Mudge v Macomb Co*, 210 Mich App 436, 443; 534 NW2d 539 (1995), rev'd in part on other grounds, 458 Mich 87 (1998) (listing "quantum meruit" as a common-law remedy). When a statute provides a remedy for enforcement of a common-law right, the statutory scheme is merely cumulative and not exclusive. *Pompey v Gen Motors Corp*, 385 Mich 537, 552-553; 189 NW2d 243 (1971). Moreover, unlike the texts of certain other statutes, the text of the PWBA does not expressly exclude alternative remedies provided under the common law. See, e.g., *Kraft v Detroit Entertainment, LLC*, 261 Mich App 534, 546; 683 NW2d 200 (2004). Because the remedy provided by the PWBA does not exclude the availability of alternative common-law remedies, plaintiffs' unjust enrichment claims against defendant were not barred by the availability of statutory relief under the PWBA. Notwithstanding the availability of claims against defendant's payment bond

---

[7] See, e.g., *F Bender, Inc v Jos L Muscarelle, Inc*, 304 NJ Super 282, 284-285; 700 A2d 374 (NJ App, 1997) (holding that a sub-subcontractor could recover against a general contractor only under the New Jersey mechanic's lien statute and not under a theory of quantum meruit).

under the PWBA, plaintiffs were entitled to seek quantum meruit recovery from defendant.[8]

### F. CONSTRUCTIVE TRUST

Finally, defendant argues that the trial court erred in imposing a constructive trust over certain property or funds in an effort to ensure that defendant would compensate plaintiffs upon a determination of the proper recovery amounts. We disagree.

A court may impose a constructive trust when necessary to do equity or avoid unjust enrichment. *Kammer Asphalt, supra* at 188. A constructive trust may thus be imposed under any circumstance that renders it unconscionable for the holder of legal title to retain and enjoy the property. *Id.*

Relying on *Kammer Asphalt*, defendant asserts that a constructive trust was inappropriate in this case because such a trust may not be imposed against a party that has not contributed to the reasons underlying the imposition of the trust. It is true that a constructive trust "may not be imposed upon parties 'who have in no way contributed to the reasons for imposing a construc-

---

[8] Defendant argues that by allowing material suppliers and sub-subcontractors to maintain unjust enrichment claims against general contractors in addition to the statutory remedy provided by the PWBA, this Court effectively makes all general contractors responsible as guarantors of the debts of their subcontractors. However, this argument must fail. As noted earlier, recovery in quantum meruit is available only when a defendant's enrichment has been unjust or inequitable in nature. 66 Am Jur 2d, Restitution and Implied Contracts, § 32, p 628. Therefore, when a general contractor is merely innocently enriched at the sub-subcontractor's expense, and has not acted unjustly or inequitably in retaining the benefit provided by the sub-subcontractor, an action against the general contractor in quantum meruit will not lie. Only in instances such as the case at bar, in which the general contractor has acted wrongfully or inequitably, will the general contractor be liable to the material supplier or sub-subcontractor in quantum meruit.

tive trust.' " *Id.*, quoting *Ooley v Collins*, 344 Mich 148, 158; 73 NW2d 464 (1955). However, as we determined above, defendant *did* contribute to the reasons for imposing the constructive trust in this case when it inequitably retained the materials and supplies delivered by plaintiffs without ensuring that plaintiffs were compensated. To the extent that the trial court imposed a constructive trust in this case, we conclude that the trust was appropriate to do equity and prevent unjust enrichment. *Kammer Asphalt, supra* at 188.

### IV. CONCLUSION

By using the materials and supplies that plaintiffs had delivered to the construction site, without ever ensuring that plaintiffs were properly compensated, defendant inequitably retained the benefit of the materials and supplies at plaintiffs' expense. Reasonable minds could not disagree that defendant was unjustly enriched at the expense of plaintiffs in this case. The trial court correctly ruled that plaintiffs were entitled to judgment as a matter of law. Partial summary disposition with respect to liability on the unjust enrichment claims was properly granted in favor of plaintiffs. In light of our resolution of the issues, we decline to address defendant's remaining argument on appeal.

Affirmed.