*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RODNEY WOODS, doing business as RODNEY
WOODS BUILDER,

Plaintiff-Appellant,

v

CITY OF SAGINAW,

Defendant-Appellee.

UNPUBLISHED
October 15, 2019

No. 344025
Saginaw Circuit Court
LC No. 16-029129-CB

Before: REDFORD, P.J., and JANSEN and LETICA, JJ.

PER CURIAM.

In this contract dispute, plaintiff, Rodney Woods, a demolition contractor doing business
as Rodney Woods Builder, appeals by right the trial court's order granting defendant, the City of
Saginaw, summary disposition. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case involved blight demolition efforts in the Saginaw area under the Troubled
Asset Relief Program ("TARP"). Defendant and the Saginaw County Land Bank Authority
("SCLBA") secured over $11,000,000 in TARP funds from the Michigan State Housing
Development Authority for blight elimination. Defendant and the SCLBA entered into a
partnership to demolish up to 950 blighted properties. The SCLBA would be responsible for
acquiring, owning, and maintaining properties slated for demolition, and defendant would be
responsible for hiring demolition contractors and overseeing their work. In 2013, defendant
began soliciting bids from numerous demolition contractors to take on the role of demolishing
the blighted properties. One of these contractors was plaintiff, a sole proprietor.

Defendant created a procedure in which each contractor submitted a "per unit costs" for
various services related to demolition. Such services included foundation removal, tree removal,
and asbestos removal. Each of these services was assigned a particular number of points.
Defendant would award demolition work to the "highest qualified contractor with the lowest
accepted and approved bids" for a period of two years, and defendant had the option to extend
this period for a third year. The remaining contractors would be ranked according to the number

-1-

of points they scored. The lowest best bid would receive the first chance for work, the second lowest best bid would receive the second chance for work, and so on down the list. The demolition properties would be awarded to a contractor "until such time that the contractor cannot meet the volume demands as determined by the City at which time the City will award work to the second lowest best bid and so on until such time as the volume demands are met."

Plaintiff submitted his bid proposal and "won" the bidding process. As the highest ranked contractor, plaintiff had first pick of the demolition properties and received 240 out of a total 480 initial properties. In total, plaintiff demolished approximately 600 houses over the life of the contract. At certain points during the life of the contract, defendant determined that plaintiff could not handle more demolitions than those he already had, and defendant subsequently gave demolition work to other contractors on the list.

Plaintiff filed a three-count complaint. In Count I, a breach of contract claim, plaintiff claimed that defendant increased the scope of the contract, and then was not adequately compensated for the extra work performed. In Count II, plaintiff sought relief under a quantum meruit theory for the extra work performed. The extra work relevant to Count I and Count II was primarily related to grading and seeding of the properties after demolition, which plaintiff claimed was not included in the parties' original contract. In support of his claim for additional compensation, plaintiff attached a letter from John C. Stemple, Chief Inspector for defendant, in which Stemple issued a change order acknowledging that plaintiff, and other contractors, had been performing work beyond the original contract and would receive additional compensation for prospective demolitions. Finally, in Count III, plaintiff made a second claim for breach of contract, this time claiming that defendant allocated demolitions to other contractors, thereby breaching an implied covenant of good faith.

Defendant filed its first motion for summary disposition in October 2017, which the trial court granted in part as to Count I, and denied in part as to Count II and Count III.[1] In granting summary disposition to defendant on Count I, the trial court concluded that the change order dealt with prospective demolitions, not demolitions already performed, and plaintiff had agreed to receiving payment for work performed after the change order was issued. However, because plaintiff only sought compensation for extra work performed before the change order was issued, plaintiff was unable to maintain a breach of contract claim based solely on the change order letter.

In March 2018, defendant filed a renewed motion for summary disposition of Count II and Count III. The trial court granted summary disposition in favor of defendant of Count II, plaintiff's quantum meruit claim, under MCR 2.116(C)(8) and (C)(10), and of Count III under MCR 2.116(C)(10) for the implied warranty of good faith claim. This appeal followed.

---

[1] Plaintiff does not challenge the grant of summary disposition in favor of defendant as to Count I on appeal.

## II. STANDARDS OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). A motion is properly granted pursuant to MCR 2.116(C)(8) when the opposing party fails to state a claim upon which relief can be granted. Such a motion "tests the legal sufficiency of the claim on the basis of the pleadings alone . . . ." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). When reviewing the motion, the trial "court must accept as true all factual allegations contained in the complaint." *Id*. The trial court must grant the motion "if no factual development could justify the plaintiff's claim for relief." *Id*. (quotation marks and citation omitted).

Additionally, a motion is properly granted pursuant to MCR 2.116(C)(10) when "there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law." *Dextrom*, 287 Mich App at 415. This Court "must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Id*. at 415-416. "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

Finally, this Court reviews de novo the trial court's decision on whether a claim for unjust enrichment can be maintained as well as the trial court's decision on an equitable matter. *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006).

## III. ANALYSIS

## A. QUANTUM MERUIT

Plaintiff first argues that the trial court erroneously awarded summary disposition on his quantum meruit claim.

Michigan law "has long recognized the equitable right of restitution when a person has been unjustly enriched at the expense of another" despite there being no contract between the parties. *Morris Pumps*, 273 Mich App at 193 (quotation marks and citation omitted). The "person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Id*. (quotation marks and citation omitted). "The theory underlying quantum meruit recovery is that the law will imply a contract in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another." *Id*. at 194. However, a party may not recover in quantum meruit if an express contract between the parties covers the same subject matter. *Id*.

In this case, plaintiff seeks additional compensation for extra work performed. Plaintiff relies heavily on the change order from Stemple to support his claim that he should receive additional compensation for extra work performed on demolition jobs *before* the change order was issued. However, based on the record before us, the change order only applied to

prospective demolitions; it was not to have retroactive effect. Whether Stemple had the authority to issue the change order, or had the authority to bind defendant to the terms of the change order, is irrelevant, as plaintiff conceded in the trial court that he did receive additional compensation for extra work performed *after* Stemple issued the change order. Accordingly, we conclude that not only was plaintiff fairly compensated for demolitions performed in accordance with the original contract, but also, by his own admission, plaintiff was also fairly compensated for demolitions performed after the change order was issued. In fact, plaintiff received several million dollars for the approximately 600 demolitions he performed. Thus, plaintiff cannot recover in quantum meruit on an unjust enrichment claim, and the trial court did not err in granting summary disposition in favor of defendant on that basis. Having discerned no error in the trial court's ruling on MCR 2.116(C)(8), we need not address its alternative theory premised on MCR 2.116(C)(10), and we decline to do so here.

## B. IMPLIED COVENANT OF GOOD FAITH

Plaintiff next argues that the trial court erroneously granted summary disposition regarding his breach-of-contract claim premised on an implied covenant of good faith.

A "covenant of good faith and fair dealing is an implied promise contained in every contract 'that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' " *Hammond v United of Oakland, Inc*, 193 Mich App 146, 151-152; 483 NW2d 652 (1992) (citations omitted). This implied promise applies to a contract that "makes the manner of [a party's] performance a matter of its own discretion . . . ." *Ferrell v Vic Tanny Int'l, Inc*, 137 Mich App 238, 243; 357 NW2d 669 (1984) (quotation marks and citation omitted). The implied promise requires such a party to exercise its discretion "honestly and in good faith." *Id*. (quotation marks and citation omitted). Michigan law does not recognize a separate action for breach of an implied covenant of good faith apart from a claim for breach of the contract on which the implied promise is premised. *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 476; 666 NW2d 271 (2003). "A lack of good faith cannot override an express provision in a contract." *Eastway & Blevins Agency v Citizens Ins Co of America*, 206 Mich App 299, 303; 520 NW2d 640 (1994).

In the present case, the contract provided that the demolitions would be awarded "until such time that the contractor cannot meet the volume demands *as determined by the City* at which time the City will award work to the second lowest best bid and so on until such time as the volume demands are met" (emphasis added). There was no further instruction for how defendant was to determine if a contractor could not meet volume demands. Accordingly, an implied covenant of good faith applied in this instance to safeguard plaintiff against seemingly unbridled discretion by defendant. See *Ferrell*, 137 Mich App at 243.

However, plaintiff failed to demonstrate any evidence of bad faith. Defendant, as the moving party, submitted the Stemple affidavit in which Stemple averred that defendant had a process to determine whether a contractor was at capacity and could not handle any further properties for the time being. Various factors were considered in this process, including "the contractor's level of experience with demolitions, the contractor's quality of work, and whether the contractor was fully completing demolitions that had been assigned in a timely and efficient manner." Stemple averred that he had been concerned about plaintiff's lack of experience with

-4-

demolition work and the fact that he at one point had over 100 incomplete demolition properties. Moreover, plaintiff had received continuous work throughout the contract's life so long as he was able to meet volume demands and was the first contractor considered when allocating additional properties.

Accordingly, defendant provided documentary evidence to support its position that it had not acted in bad faith in its allocation of demolition properties. The affidavit demonstrated that there was a process by which defendant determined if a contractor was able to receive more demolition properties, and, through this process, defendant determined that plaintiff was at volume capacity at certain periods of time, which required defendant to allocate properties to other contractors.

In response, plaintiff submitted an e-mail from one of his employees in which the employee stated that plaintiff was capable of taking on more work. However, this did not rebut the Stemple affidavit; rather the e-mail demonstrated plaintiff's employee held the subjective belief that plaintiff was capable of taking on more properties at that period in time. It did not address the other periods of time, and it did nothing to demonstrate that the *process* defendant utilized was undertaken in bad faith or that defendant had applied the process in bad faith. Plaintiff may have disagreed with defendant's determination that he was unable to meet volume demands, but plaintiff failed to show any evidence of bad faith in making that determination. See *Ferrell*, 137 Mich App at 243. Accordingly, defendant was entitled to summary disposition under MCR 2.116(C)(10). *Dextrom*, 287 Mich App at 415-416.

Briefly, we note that plaintiff also argues that the trial court applied the incorrect standard in granting summary disposition in favor of defendant. However, even assuming that the trial court should have used the standard put forth by plaintiff, the result would not be different. Plaintiff contends that the standard for the implied covenant of good faith is for the party to utilize its discretion "honestly and in good faith." *Ferrell*, 137 Mich App at 243 (quotation marks and citation omitted). As discussed previously, the Stemple affidavit provided the process that defendant used in allocating the properties, which included a number of factors and considerations. The e-mail did nothing to show that the process provided by Stemple was dishonest or undertaken in bad faith. Under plaintiff's proposed standard, summary disposition was still proper. See *Outdoor Sys, Inc v Clawson*, 262 Mich App 716, 720 n 4; 686 NW2d 815 (2004) (stating that this Court will not reverse the trial court for reaching the correct result for the wrong reasons).[2]

---

[2] Finally, plaintiff again takes issue with the trial court's failure to consider his affidavit. However, as discussed previously, the affidavit was untimely, and, even if considered, it espoused essentially the same contentions as those in the e-mail, i.e., that plaintiff was not near capacity. Accordingly, the affidavit would not have affected the outcome because it had the same deficiency as the e-mail: it failed to demonstrate bad faith.

Affirmed.

/s/ James Robert Redford
/s/ Kathleen Jansen
/s/ Anica Letica