*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARTER TOWNSHIP OF PITTSFIELD,

        Plaintiff-Appellant,

v

WASHTENAW COUNTY TREASURER,

        Defendant-Appellee.

FOR PUBLICATION
August 19, 2021
9:00 a.m.

No. 352524
Washtenaw Circuit Court
LC No. 18-000470-CZ

Before: BORRELLO, P.J., and SERVITTO and STEPHENS, JJ.

SERVITTO, J.

Plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition, denying plaintiff's motion for summary disposition, and denying plaintiff's first and second motions to amend its complaint. We affirm.

## I. BACKGROUND

Under the General Property Tax Act (GPTA), townships are responsible for collecting property taxes for each property in their boundaries on behalf of all taxing entities (state, county, school districts, etc.). MCL 211.44. The township treasurer pays the collected taxes to the county treasurer. If, by March 1 of the tax year, the township is unable to collect the taxes that are due on a property or properties, the township turns over the delinquent taxes to the county, which then becomes responsible for collecting the taxes. MCL 211.45, MCL 211.55.

On March 1 of each tax year, taxes due in the immediately preceding year that remain unpaid are returned to the county treasurer as "delinquent." MCL 211.78a(2). On March 1 of the year following the delinquency, properties with delinquent taxes are "forfeited" to the county treasurer for the amount of the tax delinquency, as well as any interest, penalties, and fees associated with the delinquency. MCL 211.78g(1). After forfeiture, the county may foreclose on the property and conduct an auction to sell the property. MCL 211.78h, MCL 211.78m.

If the county elects to serve as a foreclosing governmental unit, it may create a "delinquent tax revolving fund" that funds local municipalities for the unpaid delinquent taxes. MCL 211.87b. Defendant has elected to create a revolving delinquent tax fund, from which it advances funds to

-1-

any township with a delinquency, to cover the unpaid taxes. MCL 211.87b(3). This ensures that the township has enough revenue to provide for the health, safety, and welfare of its residents. *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 443 n 14; 952 NW2d 434 (2020).

Once a foreclosed-upon property is sold, the foreclosing governmental unit deposits the sale proceeds into an account designated as the "delinquent tax property sales proceeds for the year [the taxes became delinquent]." MCL 211.78m(8). The account is comprised of the proceeds of all sales for that year, such that the proceeds of a single sale are commingled with the proceeds of all the other sales. If the property sales are not large enough to pay the delinquent taxes owed, defendant has the right to recover the amount of delinquent taxes and interest from the taxing entity (here, plaintiff). MCL 211.87b(1). This is called a "chargeback."

According to plaintiff's April 2018 complaint, for the tax years 2011-2015 the owners of properties in the Wellesley Gardens condominium complex ("the Wellesley Parcels"), located within plaintiff's boundaries, failed to pay their property taxes and plaintiff turned the delinquent taxes over to defendant in accordance with MCL 211.78a(2). In 2015, defendant initiated foreclosure proceedings with respect to the Wellesley Parcels but was able to recoup far less than the delinquent taxes due on those parcels. On December 1, 2015, defendant sent plaintiff a chargeback bill in the amount of $68,878.69 for the taxes still owed on the Wellesley Parcels. Included in that chargeback bill amount, however, was $23,255.45 in fees defendant had assessed against the properties throughout the course of its efforts to collect the delinquent taxes and sell the properties. Plaintiff refused to pay those fees, because in its opinion, they cannot be included in the chargeback amount.

Thereafter, in 2016, defendant sent plaintiff a settlement check for plaintiff's portion of the previous year's delinquent taxes that defendant had collected for plaintiff, but withheld the $23,255.45 amount it had previously sought to collect from plaintiff. Despite plaintiff's demand for the $23,255.45, defendant refused to pay it. Plaintiff's one-count complaint thus alleged conversion on the part of defendant and sought both a judgment in its favor for the $23,255.45 withheld by defendant and an order enjoining defendant from any further withholding of funds other than those attributable to taxes and interest when calculating amounts due.

On March 27, 2019, defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (10). According to defendant, the challenged fees are to be included in the chargebacks. Defendant asserted that the administration fees challenged by plaintiff were assessed in compliance with the GPTA, were lawfully collected by defendant pursuant to the GPTA, belong to defendant, are not plaintiff's property, and have thus not been converted. Defendant further asserted that plaintiff failed to state a claim for injunctive relief because defendant's withholding of the administration fees was lawful, plaintiff would have an adequate legal remedy if it was not, and plaintiff's alleged future injuries were speculative.

Thereafter, plaintiff moved to amend its complaint to add a claim for mandamus and moved for summary disposition in its own favor pursuant to MCR 2.116(C)(10). According to plaintiff, while defendant has full recourse to recover delinquent taxes and interest from plaintiff, fees assessed by defendant after the delinquent taxes have been turned over to defendant cannot be charged back to plaintiff under MCL 211.87b. Plaintiff's argument was based, in large part, on its assertion that there was no question of material fact that defendant's fees were not included in the

definition of "delinquent taxes" set forth in MCL 211.78a(1). Plaintiff further argued it is entitled to the full amount of its 2016 settlement and defendant could not reduce the settlement owed because it believed plaintiff owed it money for fees.

The cross-motions for summary disposition and plaintiff's motion to amend its complaint were heard on April 24, 2019. The trial court orally denied plaintiff's motion to amend its complaint "for now." The trial court took the summary disposition motions under advisement, indicating that it would issue a written opinion.

After the summary disposition motions were heard, but not yet resolved, plaintiff filed a second motion to amend its complaint. Plaintiff stated in its motion that in April 2019, the parties signed the 2018 delinquent tax settlement sheet, which stated the amount due to plaintiff from the 2018 delinquent tax revolving fund. According to plaintiff, the check it thereafter received was $8,275.93 less than the amount agreed upon on the 2018 settlement sheet. Upon inquiries from plaintiff, defendant provided information detailing that the reduction corresponds to the amount of plaintiff's taxes and fees that had not yet been paid on 218 parcels located in the Wellesley development. Plaintiff asserted that defendant was required to deliver to plaintiff its full portion of the taxes that were returned as delinquent under MCL 211.55 and MCL 211.78a and the discrepancy represents defendant's failure to do so. Plaintiff thus sought to amend its complaint to add a request for mandamus, a claim of unjust enrichment, and to include the additional money withheld by defendant.

On January 15, 2020, the trial court entered an opinion and order granting defendant's motion for summary disposition, denying plaintiff's motion for summary disposition, and denying plaintiff's first and second motions to amend its complaint. The trial court opined that MCL 211.78m requires that defendant's delinquent tax revolving fund be reimbursed from foreclosure sales for all taxes, interest, and fees on all of the property. The trial court then determined that when MCL 211.87b is read together with MCL 211.78m, they allow defendant to include its administration fees imposed upon the uncollected tax in the chargeback to plaintiff. It further found that MCL 211.87b also entitles defendant to collect its fee by reducing a settlement amount owed to plaintiff and that plaintiff's claim for conversion would fail no matter what the reading of the relevant statutes was, given that the parties had an agreement much like a consignment contract. Finally, the trial court determined that amendment of plaintiff's complaint was not warranted. It specifically found that because plaintiff had no right to the funds withheld by defendant, a claim for mandamus would be futile and the factual allegations plaintiff sought to add occurred after the first complaint was filed and could be addressed in a separate action.

## II. ANALYSIS

### A. CHARGEBACK

Plaintiff contends on appeal that, contrary to the trial court's determination, when the county treasurer sells properties delinquent in their taxes at a foreclosure sale for less than the delinquent taxes owed, it may not include administrative fees incurred by it in its efforts to collect delinquent taxes from the property owners as "taxes" chargeable back to the taxing entities under MCL 211.78a(1). We disagree.

We review de novo the trial court's grant of summary disposition under MCR 2.116(C)(8) to determine whether the opposing party failed to state a claim upon which relief can be granted. *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010). As stated in *Dalley*:

> A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings. When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the moving party. A party may not support a motion under subrule (C)(8) with documentary evidence such as affidavits, depositions, or admissions. Summary disposition on the basis of subrule (C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. [*Id.* at 304-305 (quotation marks and citations omitted)]

A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Bernardoni v City of Saginaw*, 499 Mich 470, 472–73; 886 NW2d 109 (2016). In ruling on a motion brought under (C)(10), "the Court considers all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. In addition, MCR 2.116(G)(4) requires that a motion under (C)(10) specifically identify and support the issues as to which the moving party believes there is no genuine issue as to any material fact. When this is done, "an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her." *Id*.

We review issues of statutory interpretation de novo. *Karpinsky v Saint John Hosp-Macomb Ctr Corp*, 238 Mich App 539, 542; 606 NW2d 45 (1999). The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *Petersen v Magna Corp*, 484 Mich 300, 307; 773 NW2d 564 (2009).

> The first step in ascertaining such intent is to focus on the language of the statute itself. If statutory language is unambiguous, the Legislature is presumed to have intended the meaning expressed in the statute. The words of a statute provide the most reliable evidence of the Legislature's intent, and as far as possible, effect should be given to every phrase, clause, and word in a statute. If the statutory language is certain and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. [*Id*., footnotes omitted)]

When statutory language is ambiguous (i.e., if the wording is susceptible to more than one reasonable interpretation), however, judicial construction is appropriate. *Karpinsky*, 238 Mich App at 543.

Plaintiff does not dispute that defendant may charge administrative fees for its efforts to collect delinquent taxes and pursue foreclosure. Indeed, it could not, as such fees are specifically allowed. See, e.g., MCL 211.59(6) ("The county property tax administration fee shall be used by

the county to offset the costs incurred in and ancillary to collecting delinquent property taxes and for purposes authorized by sections 87b and 87d."); MCL 211.78g ("If property is forfeited to a county treasurer under this subsection, the county treasurer shall add a $175.00 fee to each property for which those delinquent taxes, interest, penalties, and fees remain unpaid."); MCL 211.44(3) ("A property tax administration fee is defined as a fee to offset costs incurred by a collecting unit in assessing property values, in collecting the property tax levies, and in the review and appeal processes."). The issue for our resolution is whether defendant may charge those fees back to a township as part of its right to recover the amount of the delinquent taxes and interest from the township under MCL 211.87b.

The creation of a delinquent tax revolving fund, such as the one created by defendant, is provided for at MCL 211.87b. That statute states, in relevant part:

> (1) The county board of commissioners of any county, on behalf of the taxing units in the county . . . may create a delinquent tax revolving fund that, at the option of the county treasurer, may be designated as the "100% tax payment fund". Upon the establishment of the fund, all delinquent taxes . . . are due and payable to the county, on behalf of the taxing units in the county and this state. Money and other property and assets held in the delinquent tax revolving fund shall be kept separate from and shall not be commingled with any other money, property, or assets in the custody of the county treasurer. All money, property, and assets acquired by the county treasurer, whether as revenues or otherwise, shall be held by it in trust for the taxing units in the county for which the taxes are levied. The county shall have no right, title, or interest in the delinquent tax revolving fund except for the right to payment provided for in section 87b(7) or 87c(3). . . . If the delinquent taxes that are due and payable to the county are not received by the county on behalf of the taxing units in the county and this state for any reason, the county has full right of recourse against the taxing unit or to this state for the state education tax under the state education tax act, 1993 PA 331, MCL 211.901 to 211.906, to recover the amount of the delinquent taxes and interest at the rate of 1% per month or fraction of a month or a lower rate as established by resolution of the board of commissioners until repaid to the county by the taxing unit. . . . Any amount that is due from a local taxing unit or this state for a prior year's uncollected delinquent tax is a lien against any future delinquent tax payments that may be payable to a local taxing unit or this state and the lien shall be satisfied by offsetting the amount due to the county from the local taxing unit or this state when distributions from the delinquent tax revolving fund are made by the county to the local taxing unit or this state in a subsequent year. . . .

> (3) The county treasurer shall pay from the fund any or all delinquent taxes that are due and payable to the county and any school district, intermediate school district, community college district, city, township, special assessment district, this state, or any other political unit for which delinquent tax payments are due within 20 days after sufficient funds are deposited within the delinquent tax revolving fund. . . .

(6) The interest charges, penalties, and county property tax administration fee rates established under this act shall remain in effect and shall be payable to the county delinquent tax revolving fund.

Plaintiff, a taxing entity, acknowledges that because delinquent taxes owed on the Wellesley Parcels were not paid as required, defendant could seek recourse against plaintiff for the "amount of the delinquent taxes and interest" as set forth in MCL 211.87b(1). Plaintiff then looks to MCL 211.78a(1) for the definition of "taxes." That provision provides, in relevant part:

(1) For taxes levied after December 31, 1998, all property returned for delinquent taxes, and upon which taxes, interest, penalties, and fees remain unpaid after the property is returned as delinquent to the county treasurers of this state under this act, is subject to forfeiture, foreclosure, and sale for the enforcement and collection of the delinquent taxes as provided in section 78, this section, and sections 78b to 79a. As used in section 78, this section, and sections 78b to 79a, "taxes" includes interest, penalties, and fees imposed before the taxes become delinquent and unpaid special assessments or other assessments that are due and payable up to and including the date of the foreclosure hearing under section 78k.3.

Plaintiff contends that because "taxes" is defined above as including only that interest and fees imposed before the taxes became delinquent, defendant cannot include any fee it tacked on to the property after they became delinquent (such as fees and costs associated with defendant's collection efforts) as part of the "amount of the delinquent taxes and interest" it may charge back to plaintiff as recourse under MCL 211.87b(1).

Plaintiff is incorrect in its reliance on MCL 211.78a(1) to define the "amount of the delinquent taxes and interest" that defendant may charge back to it pursuant to MCL 211.87b(1). MCL 211.78a specifically states that "*As used in section 78, this section, and sections 78b to 79a*, "taxes" includes interest, penalties, and fees imposed before the taxes become delinquent . . . ." The definition of taxes set forth in MCL 211.78a, then, is limited only to those specific provisions and is inapplicable to MCL 211.87b.

That being said, neither party directs this Court to any other definition of "taxes" that should be applicable to MCL 211.87b(1)'s language that a foreclosing unit such as defendant has recourse against the taxing unit such as plaintiff "to recover the amount of the delinquent taxes and interest at the rate of 1% per month or fraction of a month or a lower rate as established by resolution of the board of commissioners until repaid to the county by the taxing unit." "Delinquent taxes" is not defined in the above provision. However, MCL 211.78a(3) allows for a county to charge an administration fee, and specifically states that the administration fee is to be added to the property:

A county property tax administration fee of 4% and, except as provided in section 78g(3)(c), interest computed at a noncompounded rate of 1% per month or fraction of a month on the taxes that were originally returned as delinquent, computed from the date that the taxes originally became delinquent, shall be added to property returned as delinquent under this section.

Thus, once the delinquent taxes are turned over to the county, the county administration fee is imposed and becomes part of the amount that is due for that year's uncollected tax. On March 1 of the year following delinquency, properties with delinquent taxes are "forfeited" to the county treasurer for the amount of the tax delinquency, as well as any interest, penalties, and fees associated with the delinquency. MCL 211.78g(1). Only after forfeiture, may the county foreclose on the property and conduct an auction to sell the property. After sale, the foreclosing governmental unit deposits the sale proceeds into an account designated as the "delinquent tax property sales proceeds for the year [the taxes became delinquent]" and distributes any sale proceeds located in that account in a specific order of priority. MCL 211.78m(8). By the time defendant seeks a chargeback from plaintiff, then, its fees have become part of the "delinquent tax" owed.

We additionally note that MCL 211.44(6) states:

Along with taxes returned delinquent to a county treasurer, the amount of the property tax administration fee prescribed by subsection (3) that is imposed and not paid shall be included in the return of delinquent taxes and, when delinquent taxes are distributed by the county treasurer under this act, the delinquent property tax administration fee shall be distributed to the treasurer of the local unit who transmitted the statement of taxes returned as delinquent. Interest imposed upon delinquent property taxes under this act shall also be imposed upon the property tax administration fee and, *for purposes of this act other than for the purpose of determining to which local unit the county treasurer shall distribute a delinquent property tax administration fee, any reference to delinquent taxes shall be considered to include the property tax administration fee returned as delinquent for the same property.* [emphasis added].

And, more importantly, MCL 211.59(6) states:

The county property tax administration fee shall be used by the county to offset the costs incurred in and ancillary to collecting delinquent property taxes and for purposes authorized by sections 87b and 87d.

MCL 211.87b(1) also states, "[a]ny amount that is due from a local taxing unit or this state for a prior year's uncollected delinquent tax is a lien against any future delinquent tax payments that may be payable to a local taxing unit or this state and the lien shall be satisfied by offsetting the amount due to the county from the local taxing unit or this state when distributions from the delinquent tax revolving fund are made by the county to the local taxing unit or this state in a subsequent year." By virtue of the above, defendant could include its administration fees in its chargeback to plaintiff as part of the "delinquent taxes" it was entitled to pursue under MCL 211.87b(1), and could offset that amount against any subsequent year's settlement.

Plaintiff nonetheless directs this Court to *Rafaeli*, 505 Mich at 443 n 15, wherein our Supreme Court noted:

Any taxes, interest, penalties, and fees subsequently collected by the county treasurer are deposited into the delinquent tax revolving fund. If delinquent property taxes are not collected, properties are foreclosed and typically sold at a public auction known as a tax-foreclosure sale. In disbursing the proceeds from the tax-foreclosure sale, the first priority is to reimburse the delinquent tax revolving fund for "all taxes, interest, and fees on all of the property …." MCL 211.78m(8)(a). If the county is ultimately unable to collect the entire amount it advanced to the municipalities, either by tax collection or foreclosure sales, then the county can charge the municipalities back the uncollected amount. MCL 211.87b(1).

Plaintiff contends that the last sentence, above, is a conclusive holding by our Supreme Court that the only chargeback a county may pursue are the monies it advanced to the township. However, the above is a footnote and was not necessary for the resolution of the issue before the Supreme Court in that matter. "It is a well-settled rule that statements concerning a principle of law not essential to determination of the case are obiter dictum and lack the force of an adjudication." *Griswold Properties, LLC v Lexington Ins Co*, 276 Mich App 551, 557–58; 741 NW2d 549 (2007). Thus, even though plaintiff was not advanced monies to cover the county administration fees, this does not mean that the county must "eat" the costs it incurred in pursuing the payment of delinquent taxes on properties located within in plaintiff's boundaries.

This finding is consistent with the requirement that when a county advances money from the revolving tax fund to a taxing entity (such as plaintiff) for the amount of delinquent taxes the taxing entity was unable to collect after the county forecloses on the property at issue, its first obligation is to reimburse the delinquent tax revolving fund for "all taxes, interest, and fees on all of the property." Indeed, MCL 211.78m(8) requires that the foreclosing governmental unit *shall* "deposit the proceeds from the sale of property under this section into a restricted account designated as the "delinquent tax property sales proceeds for the year _____". MCL 211.78m(8) then requires that the foreclosing governmental unit use those proceeds to first reimburse the delinquent tax revolving fund created under MCL 211.87b of MCL 211.87f "for all taxes, interest, penalties and fees" MCL 211.78m(8)(a)-(d). Thus, *any* taxes, interest, penalties, and fees on foreclosed upon properties paid out of the revolving tax fund must be reimbursed from the foreclose sale proceeds. There is no language limiting the taxes, interest, penalties and fees to only those due and owing before the property taxes became delinquent and were turned over to the county for collection efforts. Simply, if money was taken out of the revolving fund in connection with a later-foreclosed upon property, all of those monies must be repaid back into the revolving fund first and foremost upon foreclosure. As a result, defendant could properly include its administration fees in its chargeback to plaintiff.

Finally, plaintiff cannot support its sole claim of conversion under any circumstances. "Under the common law, conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Distribution Services, Inc*, 497 Mich 337, 346; 871 NW2d 136 (2015).

MCL 211.87b(1) states that "[a]ll money, property, and assets acquired by the county treasurer, whether as revenues or otherwise, shall be held by it in trust for the taxing units in the county for which the taxes are levied. The county shall have no right, title, or interest in the delinquent tax revolving fund except for the right to payment provided for in section 87b(7) or

-8-

87c(3)." Neither 87b(7) or 87c(3) are implicated in this matter. Thus, all monies in defendant's delinquent tax fund do not belong to defendant and monies expended by defendant from the fund were done so in trust for plaintiff. Any monies remaining in the fund are also held in trust and do not belong to defendant. That being the case, defendant could not have converted any monies in that fund.

Alternatively, the administrative fees assessed and collected by defendant belong to defendant as a charge against properties with delinquent taxes. Because conversion requires conversion of property belonging to another and the fees assessed and collected at no time belonged to plaintiff, plaintiff's claim of conversion still fails.

## B. MOTIONS TO AMEND

Plaintiff asserts that it should have been permitted to amend its complaint to add claims for a writ of mandamus and unjust enrichment. However, plaintiff acknowledges that the trial court denied the motions to amend because its interpretation and application of the relevant statutes rendered the proposed amendments futile and specifically contends that if, as plaintiff asserts, the trial court's analysis of the relevant statutes was wrong, then it was also wrong about plaintiff's motions to amend the complaint. Having found that the trial court was correct in its statutory analysis and conclusions, plaintiff's claim of automatic error with respect to its motions to amend is without merit. We briefly address plaintiff's claim of error in any event.

We review a trial court's decision on a motion to amend pleadings for an abuse of discretion. *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). Because a court should freely grant leave to amend a complaint when justice so requires, a motion to amend should ordinarily be denied only for particularized reasons. *Miller v Chapman Contracting*, 477 Mich 102, 105; 730 NW2d 462 (2007). Reasons that justify denying leave to amend include undue delay, undue prejudice to the defendant, or futility. *Wormsbacher v Seaver Title Co*, 284 Mich App 1, 8; 772 NW2d 827 (2009).

In its first motion, plaintiff sought to amend its complaint to add a claim for mandamus. Plaintiff bears the burden of showing entitlement to the extraordinary remedy of a writ of mandamus. *White-Bey v Dept of Corr*, 239 Mich App 221, 223; 608 NW2d 833 (1999). To obtain a writ of mandamus, the plaintiff must show:

> (1) the plaintiff has a clear legal right to the performance of the duty sought to be compelled, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial in nature, and (4) the plaintiff has no other adequate legal or equitable remedy. [*Id*. at 223-224]

As this Court found that plaintiff did not have a clear legal right to the funds withheld by defendant, plaintiff cannot establish even the first element necessary to establish mandamus. Moreover, even if this Court found otherwise, plaintiff would have an adequate legal or equitable remedy. It could, as it did here, pursue a claim to obtain the monies allegedly wrongfully withheld. Thus, a claim of mandamus would be futile.

In its second motion to amend, plaintiff sought to add a claim for unjust enrichment. In order to sustain a claim of unjust enrichment, a plaintiff must establish "(1) the receipt of a benefit

-9-

by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 195; 729 NW2d 898 (2006). "In other words, the law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense." *Id*.

In seeking to add a claim of unjust enrichment, plaintiff proposed to include allegations concerning the 2018 settlement sheet. As the trial court noted, these factual allegations concern events that occurred after the allegations that made up the initial complaint. Plaintiff admits in its appeal brief that "This case is limited to the 2015 tax sale." The additional purported allegations concern different transactions and appear to concern not a county administrative fee charged back to plaintiff but the withholding of plaintiff's own administration fees and taxes. This Court has ruled that defendant could lawfully charge back its administration fees to plaintiff as part of delinquent property taxes, but neither this Court nor the trial court had cause to consider any issue concerning plaintiff's administration fees and taxes. "An amendment that adds a claim or a defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading." MCR. 2.118(D). It appearing that this is a new matter, separate and distinct from that raised in plaintiff's original complaint, plaintiff's purported amendment would not relate back to its original pleading and plaintiff would have a separate cause of action against defendant to address this issue.

Moreover, plaintiff allegedly received the incomplete check on or about June 18, 2019, yet did not move to amend its complaint based on that check until almost two months later. And, discovery in this matter closed long before both plaintiff's first and second motions to amend. Thus, plaintiff's motion to amend could be deemed unduly delayed. The trial court properly denied plaintiff's motions to amend.

Affirmed.

/s/ Deborah A. Servitto
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens