*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TIMOTHY HORTON and KATHLEEN HORTON,

        Plaintiffs/Counterdefendants-
        Appellees,

v

DAVID GEBOLYS,

        Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
July 23, 2020

No. 348461
Oceana Circuit Court
LC No. 18-012840-CH

Before: BORRELLO, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

In this property-dispute action, defendant appeals by right the trial court's order granting plaintiffs possession of the property in dispute on the bases that the parties had no binding agreement for the sale of the property and that defendant's lease on the property had expired. We affirm.

## I. BASIC FACTS

Plaintiffs owned a piece of property on Crystal Lake that was subdivided into four parts. In 2003, defendant and his then-wife entered into a lease agreement to purchase the part of the property referred to as Parcel B. The lease agreement included an option to exercise a purchase of Parcel B until January 30, 2004. The option expired on January 30, 2004, the same day as the lease. The purchase price would be $112,500, and defendant and his wife would get credit against the purchase price for all lease payments in the event the option was exercised. The transfer could be by land contract or warranty deed. The purchase price was to be paid in full at the time of closing with certified funds. However, the option further stated that if defendant failed to exercise the option before it expired, the option would expire, and plaintiffs would retain all the consideration and have no further obligation to defendant and his wife, who were required to exercise the option in writing. The agreement also indicated that it could not be amended or released in whole or in part except for a writing signed by all the parties.

Defendant and his wife divorced in 2005. Thereafter, defendant alone remained in possession of the property. In 2014, defendant stopped making payments on the property, and

thereafter, in 2018, plaintiffs filed a notice to quit and sought possession of the property. Defendant filed a countercomplaint alleging that the parties had a land contract, which he alleged was satisfied. Alternatively, defendant argued that he should be granted an equitable remedy on the basis of the payments he had made, the services he allegedly provided to plaintiffs, and the improvements he had made to the property.

Throughout the pendency of the case, the parties participated in discovery and a case evaluation. Plaintiffs accepted the result of the case evaluation, while defendant did not. Ultimately, after a two-day trial, the trial court questioned defendant's credibility and concluded that the parties did not have a valid contract for the purchase of the property. More specifically, the trial court determined that defendant's status in relation to the property was that of a holdover tenant. Accordingly, the trial ordered that defendant vacate the property, denied defendant's request for an equitable remedy, and issued a judgment granting plaintiffs' request for possession of the property.

## II. EXISTENCE OF A LAND CONTRACT

Defendant argues that the trial court erred when it concluded that the parties did not have a valid contract and that the existence of such a contract was barred by the statute of frauds. We disagree.

The existence of a contract is a question of law that this Court reviews de novo. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). This Court also reviews de novo the question whether the statute of frauds bars a contract claim. *Id*. at 458.

"Before a contract can be completed, there must be an offer and acceptance. Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed." *Kloian*, 273 Mich App at 452 (quotation marks and citation omitted). To form a contract, there must be "mutual assent or a meeting of the minds on all the essential terms." *Id*. The essential elements in a land contract are identification of the property, parties, and consideration, and, where payments are deferred, the amount and time of installment payments, and the rate of interest. *Zurcher v Herveat*, 238 Mich App 267, 284-291; 605 NW2d 329 (1999).

Further, "[a]n option is basically an agreement by which the owner of the property agrees with another that he shall have a right to buy the property at a fixed price within a specified time." *Oshtemo Twp v Kalamazoo*, 77 Mich App 33, 37; 257 NW2d 260 (1977). "[S]trict compliance with the terms of [the option] is required; acceptance must be in compliance with the terms proposed by the option both as to the exact thing offered and within the time specified; otherwise the right is lost." *Le Baron Homes v Pontiac Housing Fund*, 319 Mich 310, 315; 29 NW2d 704 (1947). "[S]ubstantial compliance with the terms of the option is not sufficient to constitute an acceptance of the offer." *Bergman v Dykhouse*, 316 Mich 315, 319; 25 NW2d 210 (1946) (quotation marks and citation omitted).

Throughout the lower court proceedings, the only written agreement presented to the court evidencing the parties' agreement in regard to Parcel B was the parties' 2003 lease agreement, which provided defendant an option to purchase. Defendant suggests that the parties "knew" that the option for a land contract was exercised during the initial agreement period and that the parties'

subsequent acts evidenced the existence of a land contract. However, on appeal, as he did before the trial court, defendant fails to present any evidence to support a conclusion that he accepted the option in accordance with the written terms of the agreement. Indeed, at trial defendant could not confirm that the option was exercised in writing. In contrast, Timothy Horton (Timothy), who was the primary party responsible for representing plaintiffs throughout all the real estate transactions, testified that defendant never exercised the option to purchase the property, and instead requested a letter in the midst of his divorce evidencing that defendant and his wife had no interest in the property and had not exercised the option to purchase the property.

Further, a tenant under a lease agreement becomes a "holdover tenant" by remaining in a leased space after the expiration of the lease agreement. *TCG Detroit v Dearborn*, 261 Mich App 69, 88; 680 NW2d 24 (2004). Indeed, the Michigan Supreme Court has previously determined that a tenant's holding over and the landlord's acceptance of rent create a presumption that the parties intend to renew the tenancy. *Kokalis v Whitehurst*, 334 Mich 477, 477; 54 NW2d 628 (1952). Defendant did not present any evidence before the trial court or on appeal to rebut this presumption. Given the lack of written evidence that defendant ever exercised the option to proceed with a purchase under a land contract or warranty deed, we agree with the trial court's determination that defendant remained on the property after the expiration of the option and original lease as a holdover tenant. Further, because no further evidence of a subsequent land contract was proven by defendant, the trial court did not err by concluding that the parties did not have an enforceable land contract.

Nonetheless, defendant argues that the parties reached an oral agreement for the purchase of the property in 2006, following the completion of his divorce, and the trial court erred by concluding that the statute of frauds barred the existence of this renewed land contract. This argument is unpersuasive.

In Michigan, the sale of land is controlled by the statute of frauds. *Zurcher*, 238 Mich App at 276. "The statute of frauds exists for the purpose of preventing fraud or the opportunity for fraud, and not as an instrumentality to be used in the aid of fraud or prevention of justice." *Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 526-527; 644 NW2d 765 (2002). In relevant part, MCL 566.132 states:

> (1) In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise, is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:
>
> * * *
>
> (e) An agreement, promise, or contract to pay a commission for or upon the sale of an interest in real estate.

Similarly, MCL 566.106 requires contracts establishing an interest in land to be in writing:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating

thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

However, the writing requirement "may be satisfied by several writings made at different times" and can also be satisfied by a series of writings, rather than one single writing establishing all the terms of the contract in question. *Id*. at 111-114; *Zurcher*, 238 Mich App at 277-278.

While defendant contends that his monthly rental payments were written evidence of a continued agreement, he provided no evidence that the payments were anything more than his rental obligations. Further, to the extent that defendant argues that the 2003 land contract was "renewed" by means of an oral agreement with Timothy, it is clear to that such an agreement would not have been subject to renewal, orally or otherwise, particularly in light of defendant's divorce and how the change in parties would require a written change to the agreement under the terms of the lease.

Additionally, throughout the proceedings, defendant was unable to establish any evidence signed by plaintiffs after 2003 that evidenced an agreement to sell the property. On the contrary, a letter requested by defendant and executed by Timothy during the pendency of defendant's divorce made clear that defendant had no interest in the property and had not exercised his option to purchase the property. Moreover, even if defendant began performance on the alleged contract, he unilaterally ceased making payments in 2014, several years before the 30-year term of the land contract defendant testified to would have expired. Further, although Timothy undeniably failed to correct defendant's assertions of interest in the property in some e-mail communications in 2014, and did not advise defendant of the nonexistence of a land contract, the evidence presented also does not reflect that Timothy ever confirmed the existence of a land contract or defendant's interest in the property, either. Accordingly, on this record, we find no evidence of a single writing, or even multiple writings, that corroborate the existence of a land contract in 2006, or any other year. In sum, aside from defendant's assertion about an oral agreement to renew the nonexistent land contract, defendant is unable to establish the existence of an agreement for sale of property and is therefore barred by the statute of frauds from asserting the existence of such a contract.

### III. EQUITABLE RELIEF

Defendant further argues that the trial court erred when it denied his request for equitable relief on the basis of unjust enrichment and promissory estoppel. We disagree.

This Court reviews the trial court's factual findings after a bench trial and in an equitable action for clear error, and its legal conclusions de novo. *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130; 743 NW2d 585 (2007). More specifically, the question whether a party has been unjustly enriched is generally a factual question, but the trial court's dispositional rulings on equitable matters, including claims of unjust enrichment, are reviewed de novo. *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006). The decision to grant equitable relief rests within the sound discretion of the deciding court. See *Tkachik v Mandeville*, 487 Mich 38, 45; 790 NW2d 260 (2010).

Under the equitable doctrine of unjust enrichment, a person who has been unjustly enriched at the expense of another is required to make restitution to the other. *Morris Pumps*, 273 Mich App at 193. "The theory underlying quantum meruit recovery is that the law will imply a contract in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another." *Id*. at 194. A claim of unjust enrichment requires the complaining party to establish (1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party. *Id*. at 195. Further, "[f]or quantum meruit or unjust enrichment to apply, there must not be an express contract between the parties covering the same subject matter." *Meisner Law Group PC v Weston Downs Condo Ass'n,* 321 Mich App 702, 726; 909 NW2d 890 (2017). Instead, the law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense. *Morris Pumps*, 273 Mich App at 195.

Likewise, under the doctrine of promissory estoppel, courts may enforce a contract in equity if there was a promise, the promisor reasonably should have expected the promise to cause the promisee to act in a definite and substantial manner, the promisee did in fact rely on the promise by acting in accordance with its terms, and the promise must be enforced to avoid injustice. *Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 83; 854 NW2d 521 (2014). However, once again, the courts will impose such equitable remedies only if there is no express contract governing the subject matter of the controversy. *Martin v East Lansing Sch Dist*, 193 Mich App 166, 177; 483 NW2d 656 (1992).

As a preliminary matter, defendant's arguments are all premised on the fact that the trial court concluded that the parties did not have a valid land contract. However, in this case, the parties' 2003 lease with option to purchase was a valid written contract governing the subject matter of the controversy and expressly provided that the option to purchase could be exercised before the expiration of the lease. Although defendant did not exercise the option to purchase, as noted above, defendant became a holdover tenant subject to the renewed lease. Under these circumstances, it is clear that defendant was still required to make monthly payments as required for the lease, but he was not entitled to any equity in the property during that time. Moreover, the only promise that defendant can show was a promise that he could lease the premises with the option to buy. As noted above, the option expired without being exercised, and defendant has not shown that any subsequent promises for the sale of the property were made. Accordingly, defendant's argument that he is entitled to restitution, including the full sum he paid plaintiffs during his occupancy, is meritless and the trial court did not err by refusing to grant defendant equitable relief under the doctrine of promissory estoppel.

Defendant also contends that plaintiffs were unjustly enriched because of the various land improvements that defendant undertook over the years. However, the overwhelming testimony at trial established that the value of the primarily landscaping improvements did not significantly affect the value of the property. Further, it is clear that defendant had exclusive enjoyment of the property and his improvements during his possession of the property. In whole, defendant cannot establish that the value added to the property unjustly enriched plaintiffs.

Lastly, although defendant renews his assertion that he should be entitled to payment for services he completed during his possession of the property, we are not persuaded by this argument. Although defendant testified that he performed significant work on Parcel B and also

for Timothy, Timothy denied that he employed defendant for such purposes or established a "tab" with defendant whereby services were exchanged for equity in the property. Instead, Timothy indicated that defendant was paid for those services that were agreed upon. Moreover, given the trial court's credibility determination regarding defendant's testimony, we are not persuaded that the trial court erred by concluding that defendant was not entitled to recover those costs. In whole, we are unable to conclude that the trial court erred when it denied defendant's request for equitable remedies.

Affirmed.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Deborah A. Servitto