*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GINA JOHNSEN and the COMMITTEE TO ELECT
GINA JOHNSEN,

        Plaintiffs-Appellants,

v

STATE OF MICHIGAN and MICHIGAN
DEPARTMENT OF STATE,

        Defendants-Appellees.

UNPUBLISHED
July 21, 2022

No. 358949
Court of Claims
LC No. 21-000090-MZ

Before: MARKEY, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

Plaintiffs Gina Johnsen and the Committee to Elect Gina Johnsen appeal as of right the trial court's opinion and order granting summary disposition in favor of defendants State of Michigan and Michigan Department of State under MCR 2.116(C)(8). For the reasons explained below, we reverse the trial court and remand to that court for further proceedings.

## I. BACKGROUND

Plaintiffs filed their complaint against defendants on May 6, 2021, alleging that Johnsen ran for election to the Michigan House of Representatives to represent District 71 for the 2021-2022 term. The initial vote count for the November 3, 2020 general election indicated that she lost. On November 9, 2020, Johnsen requested an election recount, and she subsequently paid the amount required for that recount in accordance with MCL 168.881. Plaintiffs observed that under MCL 168.874 and MCL 168.891, they were entitled to have persons present at the recount "1 watcher and 1 tallier at each able [sic] to check the work of the recount clerks," and the watchers,

talliers, and candidate herself "shall be allowed to observe each ballot as it is called and to take notes as they desire for their own records."[1] Plaintiffs continued:

¶ 14. JOHNSEN's recount was held in Eaton County, Michigan on December 7 and 8, 2020.

¶ 15. The recount was conducted by local governmental officials and workers and supervised by personnel from the MICHIGAN DEPARTMENT OF STATE Bureau of Elections.

¶ 16. The local governmental officials and workers, as permitted by supervisory personnel from the MICHIGAN DEPARTMENT OF STATE Bureau of elections, violated JOHNSEN's rights created and protected by both the Michigan Election Law and promulgated rules of the Board of State Canvassers. The ensuing fiasco not only denied her the assurance that she sought and paid for; it made things worse.

¶ 17. By way of specific example:

a. The recount was not open to the public.

b. Some of JOHNSEN's watchers and talliers were denied entry because they were medically unable to wear a face mask. While they had face shields, MICHIGAN DEPARTMENT OF STATE personnel at the recount informed JOHNSEN that they were making "new rules" and no person would be admitted to the building without a face mask.

c. Poll workers hung semi-opaque shower curtains around their tables which obstructed the candidate and her watchers and talliers from performing their statutorily permitted duties. In many cases, this made it impossible for the watchers and talliers to perform their duties.

d. JOHNSEN and her watchers and talliers were denied basic conveniences such as a break / rest area. So that they "would not infect" people, they were required to take breaks outside on a cold December day.

e. Challenges made by JOHNSEN and her watchers and talliers were ignored by recount workers.

¶ 18. On December 8, 2020, which was day 2 of the recount, JOHNSEN through counsel forwarded a written demand to the MICHIGAN DEPARTMENT OF STATE. It was demanded that Bureau of Election staff direct their poll workers

---

[1] Plaintiffs also cited that similar provisions are promulgated at Mich Admin Code R 168.907, 168.916, 168.926, 168.927, and 168.912.

to comply with Michigan Election Law and cease efforts to apply arbitrary rules and restrictions that conflict with controlling law and regulation.

¶ 19. That communication further observed that final judgment had recently been entered against the Secretary of State in *Stephen Carra; et al v Jocelyn Benson; et al* in the Michigan Court of Claims (case number 20-211-MZ). In summary, *Carra v Benson* recognized that measures could be taken to protect the public health with respect to elections. However, these measures may not impede the work of those persons (challengers there, watchers and talliers here) present to ensure election integrity and prevent disenfranchisement.

¶ 20. A true and accurate copy of the demand is attached to this complaint.

¶ 21. The MICHIGAN DEPARTMENT OF STATE ignored the request. Upon being contacted directly by JOHNSEN's counsel, the Department expressly refused to take any action.

Plaintiffs requested the following relief:

¶ 22. It is respectfully requested that this Court:

a. find that the MICHIGAN DEPARTMENT OF STATE violated the Michigan Election Law as described above;

b. order the MICHIGAN DEPARTMENT OF STATE and/or the STATE OF MICHIGAN to pay restitution to JOHNSEN and/or the COMMITTEE TO ELECT GINA JOHNSEN in the amount of all funds paid for the recount she requested;

c. award nominal damages; and

d. award JOHNSEN and/or the COMMITTEE TO ELECT GINA JOHNSEN any other relief that this Court deems necessary and just, including the costs of this suit.[2]

On June 18, 2021, defendants moved for summary disposition under MCR 2.116(C)(8). In the accompanying brief, defendants argued that plaintiffs' claim for unjust enrichment must fail because (1) plaintiffs did not allege that defendants—as opposed to the county—received a "benefit," and (2) plaintiffs did not allege that retention of the deposit by defendants would be "unjust." Specifically, defendants argued as follows:

Plaintiffs' deposit was not kept by the Department of State or the State of Michigan. Instead, per statute, the funds were paid to the county treasurer at the

---

[2] Although not mentioned in the complaint, plaintiffs later represented that the statutory deposit was $6,250.

-3-

conclusion of the recount. If any entity received a "benefit" from Plaintiffs' statutory deposit, it was the county—not the State of Michigan. Further, it is the obvious purpose of the statute that deposits will be used to defray the costs of conduct an unsuccessful recount—such as in this case, where the recount took two days. . . . Defendants have not profited or enriched themselves at Plaintiffs' expense.

Moreover, Plaintiffs have failed to make allegations sufficient to establish that they are owed the "benefit" of the deposit, or that the retention of the deposit by Defendants would be in any way "unjust." The payment of the deposit is required by statute, as is the payment to the county treasurer in the event the recount does not result in the petitioner being determined to have won the election. MCL 168.881(3) and (7). Plaintiffs do not allege that the amount of the deposit was incorrect, or that a recount did not occur—and, in fact, they admit that the recount *did* occur. . . . Plaintiffs also do not allege that they prevailed in the recount, or that they are owed a refund of the deposit under MCL 168.881(7). And Plaintiffs do not dispute the validity or constitutionality of the statute.

Defendants added that to the extent that the recount was allegedly not conducted in accordance with the law, "Plaintiffs failed to take any action to enforce their demand, either to seek an injunction or to compel the Defendants to perform some alleged duty." Further, defendants noted, "Plaintiffs do not allege that any supposed irregularities during the recount affected the outcome of the recount, and Plaintiffs do not allege that—had the recount been performed differently—they would have prevailed."

On October 6, 2021, the trial court issued its opinion and order granting summary disposition in favor of defendants under MCR 2.116(C)(8), reasoning as follows:

The retention of funds is not "unjust" when the payment and retention of the deposit occurred in accordance with the statutory scheme. Plaintiffs requested a recount and the recount was conducted. Plaintiffs paid a fee that was mandated by statute for this recount and plaintiffs do not allege that they prevailed in the recount, or that they satisfied the statutory criteria set forth in MCL 168.881(7) for obtaining a refund under the statute. Indeed, there can be no obligation by defendants to make restitution of such funds. Furthermore, a statute generally does not create contractual rights or obligations, and plaintiffs have provided no authority as to why they can create contractual rights or obligations under a statute under the guise of equity.

In addition, plaintiffs had adequate legal remedies available to them which were not pursued. As noted, the Court has discretion to grant equitable relief only when another adequate remedy is unavailable. Here, plaintiffs allege that various violations of election laws and regulations occurred during the recount. Plaintiffs could have presented their allegations of those violations to a court of competent jurisdiction while the re-count was in process. That court could have afforded the plaintiffs a complete, ample and certain [sic]. A refund of a fee months after the alleged violations occurred would not offer an adequate remedy for the alleged

-4-

violations. The Court will not, under the pretext of unjust enrichment, litigate matters that have long since come and gone, and are arguably moot at this point. [Internal citations omitted.]

Plaintiffs now appeal.[3]

## II. STANDARD OF REVIEW

"We review de novo a circuit court's summary disposition ruling." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. (quotation marks and citation omitted). "When deciding a motion brought under this section, a court considers only the pleadings." *Id*. at 119-120.

"Whether a specific party has been unjustly enriched is generally a question of fact." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006). "However, whether a claim for unjust enrichment can be maintained is a question of law, which we review de novo." *Id*.

## III. DISCUSSION

Plaintiffs argue that the trial court erred by dismissing their complaint under MCR 2.116(C)(8). We agree.

"Michigan is a notice-pleading state," and "[a]ll that is required is that the complaint set forth allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend." *Johnson v QFD, Inc*, 292 Mich App 359, 368; 807 NW2d 719 (2011) (cleaned up). That is, "the primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position." *Dalley v Dykema Gossett*, 287 Mich App 296, 305; 788 NW2d 679 (2010) (cleaned up). Thus, to avoid summary disposition under MCR 2.116(C)(8), the complaint must allege every essential element of the cause of action. See *Spiek v Mich Dep't of Trans*, 456 Mich 331, 338; 572 NW2d 201 (1998) ("Taking all plaintiffs' factual allegations as true, the complaint fails to allege an essential element of their cause of action: that the damage to their property is of a unique or

---

[3] We judicially notice that the original election results showed that Johnsen received 26,049 votes while her opponent, Angela Witwer, received 28,200 votes. The recount indicated that Johnsen gained four votes while Witwer lost one vote. See https://mielections.us/election/results/2020GEN_CENR.html, accessed July 10, 2022; https://www.michigan.gov/sos/Resources/press-releases/2020/12/11/partial-recount-of-71st-house-district-confirmed-excellent-election-administration-and-accurate-res, accessed July 10, 2022.

peculiar character different from the effects experienced by all other similarly situated property owners.").

In this case, the parties do not dispute that plaintiffs sought to allege a claim of unjust enrichment. "Unjust enrichment is a cause of action to correct a defendant's unjust retention of a benefit owed to another." *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). "It is grounded in the idea that a party shall not be allowed to profit or enrich himself inequitably at another's expense." *Id*. at 417-418 (quotation marks and citation omitted). "A claim of unjust enrichment can arise when a party has and retains money or benefits which in justice and equity belong to another." *Id*. at 418 (quotation marks and citation omitted). "Unjust enrichment . . . doesn't seek to compensate for an injury but to correct against one party's retention of a benefit at another's expense." *Id*. at 419. "Restitution restores a party who yielded excessive and unjust benefits to his or her rightful position." *Id*.

> While the paradigm case of unjust enrichment is one in which the benefit on one side of the transaction corresponds to an observable loss on the other, the consecrated formula "at the expense of another" can also mean "in violation of the other's legally protected rights," without the need to show that the claimant has suffered a loss. [1 Restatement of Restitution and Unjust Enrichment, 3d, § 1, p 3.]

Simply put, "[t]he elements of a claim for unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit." *Bellevue Ventures, Inc v Morang-Kelly Inv, Inc*, 302 Mich App 59, 64; 836 NW2d 898 (2013).

MCL 168.881(3) provides that "if 1 candidate is to be elected to the office and the official canvass of votes shows that the number of votes separating the winning candidate and the petitioner is more than 50 votes or 0.5% of the total number of votes cast in the race, whichever is greater, the petitioner shall deposit with the state bureau of elections the sum of $125.00 for each precinct referred to in his or her petition."[4] Further, MCL 168.881(7) provides as follows:

> If, by reason of the recount, the petitioner establishes fraud or mistake as set forth in his or her petition and receives a certificate of election or establishes sufficient fraud or mistake to change the result upon an amendment or proposition, the votes for and against which were recounted, the state bureau of elections shall refund the money deposited to the petitioner. . . . *If a refund is not made as required by this section, then the secretary of state shall pay to the treasurer of each county its proportionate share of the deposit based upon the number of precincts in the county in which the votes were recounted*. [Emphasis added.]

With regard to specific recount procedures, MCL 168.874(2) provides that "[t]he board of canvassers shall conduct the recount so that the complete procedure may be observed and noted by the candidates or persons interested in the ballot question, their counsel, and not to exceed 1 watcher and 1 tallier at each table to check the work of the recount clerks." Mich Admin Code R

---

[4] The vote difference between Johnsen and Witwer was greater than 0.5%.

168.907(1) provides that "not more than 2 representatives and an attorney of each candidate for the office or offices the votes for which are being recounted . . . shall be present during the opening and recount of each such voting machine." Rule 168.912 provides that "[t]he representatives of each interested party shall be afforded an opportunity to observe the reading of the individual candidates . . . and each absent voter's ballot, if any, as the votes are called and to make such notations on their private records as they may desire." Rule 168.916 provides that "[e]ach candidate for the office or offices the votes for which are being recounted . . . shall be entitled to have not to exceed 2 representatives present at each table where ballot boxes are being opened or ballots recounted, and they shall be afforded an opportunity to observe the opening of ballot boxes and each ballot as the votes are called[.]" Rule 168.926 provides that "[e]ach candidate for the office or offices the votes for which are being recounted . . . shall be entitled to have present at the recount not to exceed 1 representative for every table at which ballot boxes are being opened or ballots recounted, and for every voting machine which is being recounted and not to exceed 1 watcher and tallier at each such table and voting machine provided for in R. 168.907 and R. 168.916 hereof." Finally, Rule 168.927 provides that "[p]rovision shall be made for public observance of the conduct of recounts, but the public shall not be allowed within the confines of the actual working area, nor shall vocal or other disturbance of the recount staff by the public be permitted."[5]

Turning to the instant case, again, "[t]he elements of a claim for unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit." *Bellevue Ventures, Inc v Morang-Kelly Inv, Inc*, 302 Mich App at 64.

With regard to the first element, plaintiffs alleged that they paid the statutory deposit for a recount to defendants but were not allowed the recount observation to which they were entitled under statute, administrative rule, and court order. The receipt of money by defendants would undoubtedly constitute a "benefit" for the purposes of the first element. See *id*.

However, defendants observe, without dispute from plaintiffs, that the deposit paid to defendants was remitted to the county treasurer in accordance with MCL 168.881(7) because plaintiffs' recount was unsuccessful. Thus, defendants no longer possess the deposit. And the county treasurer was not named as a defendant.

We acknowledge that plaintiffs might have been better served to name the county treasurer as an additional defendant. However, "[w]hen deciding a motion brought under [MCR 2.116(C)(8)], a court considers only the pleadings." *Maiden*, 461 Mich at 119. And the complaint in this case did not allege, or even closely imply, that defendants remitted the deposit to the county treasurer. Thus, when considering the pleadings alone, it must be reasonably inferred that defendants retained the deposit. See *id*. To the extent that defendants may avoid liability for unjust enrichment because they remitted the deposit to the county treasurer, that would be an issue under

---

[5] Rules 168.907 and 168.912 apply to recount of voting machines, Rule 168.916 applies to recount of paper ballots, and Rules 168.926 and 168.927 generally apply to election recounts. Thus, the provisions are somewhat redundant.

MCR 2.116(C)(10), which allows the court to consider documentary evidence beyond the pleadings. See *id*. at 120. In other words, for example, defendants could submit an affidavit from a person with knowledge explaining that the deposit was remitted to the county treasurer.[6] Therefore, even if defendants are correct that they cannot be liable for unjust enrichment because they remitted the deposit to the county treasurer, plaintiffs still alleged the first element for the purposes of an MCR 2.116(C)(8) motion.

For these reasons, we conclude that plaintiffs successfully alleged the first element of an unjust-enrichment claim.

With regard to the second element, plaintiffs alleged that "[t]he recount was not open to the public," "[s]ome of JOHNSEN's watchers and talliers were denied entry because they were medically unable to wear a face mask," "[p]oll workers hung semi-opaque shower curtains around their tables which obstructed the candidate and her watchers and talliers from performing their statutorily permitted duties," and "[c]hallenges made by JOHNSEN and her watchers and talliers were ignored by recount workers." At a minimum, plaintiffs' allegation that "[p]oll workers hung semi-opaque shower curtains around their tables which obstructed the candidate and her watchers and talliers," if true, would seemingly constitute a violation of MCL 168.874(2), as well as Rules 168.912 and 168.916, each of which expressly allow representatives to "observe[]" the recount process.[7]

Concerning general principles of equity, on one hand, given that the COVID pandemic was ongoing in December 2020 when the recount occurred, some of the alleged conduct by the recount officials—such as limiting public access—was understandable and reasonable. Moreover, the recount itself was unquestionably conducted, and Johnsen was again determined to have lost the election. Her allegations concern the process by which the recount was conducted, not the recount itself or its outcome. On the other hand, ignoring recount challenges and visually obstructing the recount process itself, if such allegations are true, are seemingly less than what equity would demand in a recount process. It might be the case that the recount officials only ignored frivolous challenges and visually obstructed the recount process simply to prevent unwanted disruptions, but at the MCR 2.116(C)(8) stage, the court cannot assume such facts in favor of defendants. See *Maiden*, 461 Mich at 119.

In the end, we conclude that plaintiffs' allegations are sufficiently serious to suggest that, if they are true, it would be inequitable for defendants to retain the deposit. Visually obstructing a ballot recount almost defeats the purpose of the recount itself, as it cannot be publicly validated that election officials conducted an accurate counting. Moreover, the Restatement of Restitution and Unjust Enrichment suggests that a violation "of the other's legally protected rights" may be

---

[6] In fact, Exhibit B to defendants' brief in support of their motion for summary disposition was an undated "declaration" from Lori Bourbonais, an employee of the Bureau of Elections, stating that "[o]n December 30, 2020 I authorized a payment of $6,250.00 to Eaton County as authorized by MCL 168.881(7)."

[7] Moreover, plaintiffs' allegation that "[t]he recount was not open to the public" would seemingly constitute a violation of Rule 168.927.

remedied by unjust enrichment. See 1 Restatement of Restitution and Unjust Enrichment, 3d, § 1, p 3. In this case, plaintiffs have alleged a violation of their recount rights under statute and administrative rule. This further suggests that unjust enrichment may be appropriate here.

For these reasons, we conclude that plaintiffs successfully alleged the second element of an unjust-enrichment claim. See *Morris Pumps*, 273 Mich App at 193 ("Whether a specific party has been unjustly enriched is generally a question of fact."). Therefore, the motion for summary disposition under MCR 2.116(C)(8) should have been denied,

In ruling otherwise, the trial court granted summary disposition in favor of defendants for two alternate reasons. First, "[t]he retention of the funds is not 'unjust' when the payment and retention of the deposit occurred in accordance with the statutory scheme." Second, "plaintiffs had adequate legal remedies available to them which were not pursued," including "present[ing] their allegations of those violations to a court of competent jurisdiction while the re-court was in process." We respectfully disagree with both reasons.

Concerning the first reason, plaintiffs alleged that the recount was conducted in violation of, at a minimum, MCL 168.874(2), as well as Rules 168.912 and 168.916. Plaintiffs also alleged that the recount process itself was unfair and unreasonable. Neither defendants nor the trial court cited any authority for the proposition that the government may retain a statutorily-authorized payment when it fails to provide the statutorily-required service to the payor. Thus, the first reason cited by the trial court is not sufficient to affirm its grant of summary disposition under MCR 2.116(C)(8).

Concerning the second reason, the trial court cited *Tkachik v Mandeville*, 487 Mich 38, 45; 970 NW2d 260 (2010), for its conclusion that plaintiffs are not entitled to an unjust-enrichment remedy because they could have sought court involvement when the recount was ongoing. *Tkachik* stands for the proposition that courts "may grant equitable relief where a legal remedy is not available." *Id*. (cleaned up). However, we are not aware of any authority to suggest that unjust enrichment does not apply when the wrongdoing could have been stopped by court involvement. *Tkachik*, as applied to unjust enrichment, simply means that when there is a legal remedy available—such as tort damages—unjust enrichment does not apply. It does not mean that whenever the alleged wrongdoing could have been conceivably stopped by other measures, then unjust enrichment does not apply. Thus, the second reason cited by the trial court is not sufficient to affirm its grant of summary disposition under MCR 2.116(C)(8).

## IV. CONCLUSION

We conclude that the trial court erred by granting summary disposition in favor of defendants under MCR 2.116(C)(8). Accordingly, we reverse the trial court and remand to that court for further proceedings consistent with our opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Mark T. Boonstra
/s/ Michael J. Riordan